## BANK *v.* TENNESSEE.

A bank, by its charter, is required to "pay to the State an annual tax of one-half of one per cent on each share of capital stock, which shall be in lieu of all other taxes," and is authorized to "purchase and hold a lot of ground" for its use "as a place of business," and hold such real property as may be conveyed to it to secure its debts. With a portion of its capital stock it purchased a lot with a building thereon, a portion of which it occupies as a place of business. It took, to secure money loaned, a deed of trust upon three city lots, which it subsequently purchased under this deed, and now owns. *Held*, that the immunity from taxation extends only to so much of the building, the use whereof is required by the actual wants of the bank in carrying on its business. The remainder of its real estate is subject to taxation.

ERROR to the Supreme Court of the State of Tennessee. The facts are stated in the opinion of the court.

*Mr. William Y. C. Humes* for the plaintiff in error.

*Mr. Benjamin J. Lea*, Attorney-General of Tennessee, *contra*.

MR. JUSTICE FIELD delivered the opinion of the court.

The Bank of Commerce, plaintiff in this case, is a corporation created in 1856 by the legislature of Tennessee to engage in the business of discounting notes, buying and selling stock, dealing in exchange and gold and silver bullion, and receiving moneys on deposit. Its charter provides that it " may purchase and hold a lot of ground for the use of the institution as a place of business, and at pleasure sell and exchange the same, and may hold such real or personal property and estate as may be conveyed to it to secure debts due the institution, and may sell and convey the same." The charter also declares that the

institution " shall pay to the State an annual tax of one-half of one per cent on .each share of capital stock, which shall be in lieu of all other taxes."

Previous to 1879 the bank purchased with a portion of its capital stock a lot of ground in the city of Memphis, with the improvements thereon, as a place of business, and has held the same ever since. The improvements consist of a three-story brick building, but the bank only uses the first floor for its business, and leases out the cellar and the second and third stories to other parties for a money rent.

On the 1st of January, 1880, the bank was, and ever since has been, the owner of three other lots in the city of Memphis. It had previously made loans to different parties, and taken as security for their payment a deed of the lots executed to a trustee. The loans not being paid, the lots were sold under the deed and purchased by the bank. The purchase was made solely to secure a part of the debt; and the bank now holds the lots for sale, and will sell them when practicable to restore to its legitimate business so much of its capital as is invested in them.

In March, 1875, the legislature of the State passed an act defining what property was exempt from taxation by the Constitution, what the legislature had the power to exempt and did exempt, and what was taxable; and declaring that all other property should be assessed and taxed. In the list of property designated as exempt from taxation, that held by the Bank of Commerce was not mentioned, and the act repealed all inconsistent laws.

Under this act, the lot of ground in the city of Memphis, purchased by the plaintiff, with the building upon it and used as a place of business, was assessed and taxed in the years 1879, 1880, and 1881, for State and county purposes. The three lots were also taxed in like manner for the years 1880 and 1881. The taxes were paid under protest, and the bank commenced the present suit to recover back the money. It appears to have been treated in the State court as a suit in equity, and the Chancellor sustained a demurrer to the bill and dismissed the suit. The Supreme Court of the State reversed the decree in part, holding that the bank was not liable for the

taxes on so much of the lot and building as was used for its business, but was liable for the taxes on the remainder, and on the three lots. From this latter decree the case is brought to this court by the bank, claiming exemption of the entire property from taxation under its charter.

That statutes imposing restrictions upon the taxing power of a State, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed is a familiar rule. Against the power nothing is to be taken by inference and presumption. Where a doubt arises as to the existence of the restriction, it is to be decided in favor of the State. The restriction here, consisting in the declaration that a specific tax on each share of the capital stock shall be in lieu of all other taxes, is accompanied with authority to purchase certain real property, " for the use of the institution as a place of business." The bank had no express authority to invest its capital in real property not required for that use. And it is to be presumed that the exemption, from other than the designated tax was in consideration that the capital would be employed for its legitimate purposes. It certainly would not be pretended that the corporation, by turning its whole capital into real property and engaging in real-estate business, could then, by force of the charter, escape liability to taxation for it under the general laws. But if the exemption could not be carried to that extent, it is difficult to fix any limit to the amount of real property which it may hold thus exempt, unless we take that prescribed by the charter. In our judgment, the limited exemption cannot be extended to property used beyond the actual wants of the corporation in carrying out the purposes of its creation. As well observed by the Supreme Court of the State, the contract of exemption, beyond the extent prescribed, ceased when taxable property was held for any other purpose.

It is true that the capital stock of a corporation may in a general sense be said to be all the property in which the capital is invested, so that an exemption of the capital stock, without other words of limitation, may operate to exempt all the property of the corporation. *Railroad Companies* v. *Gaines*, 97 U. S. 697. But where the purposes for which a corporation

may hold property is specified in connection with the exemption, the limitation of taxation designated must be held to apply only to property acquired for such purposes. This we consider to be the general doctrine established by the numerous cases cited by counsel. The case of *State v. Commissioners of Mansfield* (22 N. J. L. 510), decided by the Supreme Court of New Jersey, is a leading one. There it appeared that the charter of the Camden and Amboy Railroad and Transportation Company, after reserving certain imposts, declared that "no other tax or impost shall be levied or assessed upon the said company." The charter conferred upon the company the general power to purchase, receive, and hold real and personal estate; and it had acquired certain houses and lots in the township of Mansfield, which it let to its workmen and employés. These houses and lots having been assessed for taxes by the authorities of the town, the corporation sued out a writ of *certiorari* to revise their action, claiming that houses and lots were exempt under the provisions of the charter stated. The court, in deciding the case, said that the general power of purchasing, receiving, and holding real and personal estate could only be exercised to effect the purpose for which it was conferred by the government; that the power to construct a railroad and establish transportation lines upon it necessarily included the essential appendages required to complete and maintain such a work and carry on such a business, such as suitable depots, car-houses, water-tanks, houses for switch and bridge tenders, and coal and wood yards for the fuel used in the locomotives; that these were within a fair construction of the exempting clause, because they were necessary and indispensable to the operations of the company, and to the accomplishment of the objects of their charter, but that there must be a limit somewhere to the incidental power of the company to enlarge its operations and extend its property without taxation under the exempting clause, and the court concluded that the limitation must be fixed *where the necessity ends and mere convenience begins ;* that the necessary appendages of a railroad and transportation company were one thing, and that those appendages which might be convenient means of increasing the advantages and profits of the company were another thing;

that it might be advantageous for the company to purchase land and erect houses for their employés, and establish factories for making their own rails, engines, and cars, and even to purchase coal-mines and supply itself with fuel, but these are not among the necessary appendages of the company; and that the legislature, in exempting the company from all other taxes except those mentioned, only intended to include so much property as was necessary and essential to a railroad and a transportation business such as the corporation was created to construct and carry on. The court, therefore, sustained the validity of the taxes on the houses and lots in question. Numerous other cases to the same purport might be cited. *The State* v. *Newark*, 25 N. J. L. 315, 317; *Vermont Central Railroad Co.* v. *Burlington*, 28 Vt. 193; *Railroad* v. *Berks County*, 6 Pa. St. 70; *Inhabitants of Worcester* v. *The Western Railroad Corporation*, 4 Metc. (Mass.) 564. The doctrine declared in them, that the exemption in cases like the one in the charter before us extends only to the property necessary for the business of the company, is founded in the wisest reasons of public policy. It would lead to infinite mischief if a corporation, simply by investing its funds in property not required for the purposes of its creation, could extend its immunity from taxation, and thus escape the common burden of government.

As to the property which was purchased by the bank upon the sale under the trust deed, there is less reason to contend for its exemption from taxation. The express authority conferred upon the corporation to hold real property, except that acquired for the use of the institution as a place of business, was limited to such as might be taken as security for debts; while held for that purpose it was subject to taxation as the property of the debtors. Its liability in this respect, to bear its proportion of the common burden of government, was not lessened because the bank, deeming it might be more readily disposed of if freed from the debtor's right of redemption, thought proper to purchase in the title.

*Judgment affirmed.*