RALEIGH & GASTON RAILROAD COMPANY v. COMMISSION-
ERS OF WAKE.

*Railways—Taxation of Stock, &c—Exemptions under Raleigh &
Gaston Charter.*

1. The investment of money derived from the earnings of plaintiff road into "preferred stock" (of the value of which there is evidence in this case) of the Raleigh & Augusta Air Line, divests it of the character of non-taxable profits; neither it nor the rolling stock on the Air L'ne is exempt from taxation under the plaintiff's charter; but otherwise, as to the sinking fund.

2. The "guaranteed stock" of plaintiff, held under a guaranty of the payment of semi-annual dividends, is nevertheless *stock*, and not a credit to be diminished by out-standing indebtedness under the revenue act.

3. No deduction from the value of shares is allowed on account of debts owing by the tax-payer.

4. The plaintiff's charter authorizes the addition to the capital, by conversion into stock of certain moneys; *Held* that the increased stock thereby becomes *capital stock* and is included in the exempting clause.

5. The stock belonging to resident shareholders must be listed by them and not by the corporation; and they are allowed to deduct from the tax on their shares, a ratable part of the tax paid upon the corporate property by the corporation itself.

6. The tax can be levied from time to time, that is, as often as the profits reach the limit of the per cemtum prescribed in the charter.

7. The tax on the value of the stock is to be abated to the extent of the tax upon the corporate property.

8. The value of all property owned by a corporation, in whatever consisting, and including the franchise, is the true and fair measure of the value of all its stock.

(*Com'rs* v. *R. R. Co.*, 86 N. C., 541, cited and approved.)

APPLICATION of plaintiff to be relieved from payment of certain taxes, heard at Spring Term, 1882, of WAKE Superior Court, before *Bennett, J.*

The defendant commissioners in revising and completing the tax lists in their county for the year, 1881, pursuant to the directions of the act to provide for the levying and collecting of taxes (Acts 1881, ch. 117, § 21) without notice to the plaintiff company, inserted in the list, as proper subjects of taxation, ten thousand shares of preferred stock held by it in the Raleigh and Augusta Air Line railroad company, at the par value of one hundred dollars each, in the aggregate one million dollars, and the fractional part of its franchise, assessed in its entirety by the state board, apportioned to the county, as directed by section 11, at the value of twenty thousand dollars.

The plaintiff at the ensuing session of the board made application to strike out these subjects of taxation as unwarranted by law, and for excessive valuation of the former.

The commissioners refused to modify the value put upon the stock or to remove it from the list, but sustained the motion to strike out the franchise, and added, as omitted

and proper subjects of taxation, certain engines, cars and personal property worked exclusively upon the Raleigh and Augusta Air Line road, valued at $29,500; a sinking fund provided to meet its indebtedness amounting to $85,000; and imposed a tax of 25 cents a share upon 14,947 shares held by individual stock-holders in the plaintiff's company.

From this action of the commissioners the plaintiff removed the cause to the superior court, and from its ruling and judgment, as set out in the opinion here, both parties appealed.

*Messrs. Hinsdale & Devereux,* for plaintiff, insisted that the " preferred stock," being an investment, under the sanction of the state, by the act of 1871–'72, ch. 11, is exempt from taxation. *Dartmouth College* v. *Woodward,* 4 Wheat., 518, repeatedly approved by the supreme court of the United States, and of this state, (citing numerous cases in their brief.) Amendment to charter does not place the company under legislative control in respect to this matter. *R. R. Co.* v. *Brogden,* 74 N. C., 707. The charter must receive a fair, not a strained, construction. *U. S.* v. *Arradando,* 6 Peters, 740; 3 Howard, 145; 9 Howard, 210; 24 Howard, 435; 13 Wall., 264; *Attorney-General* v. *Bank,* 1 Dev. & Bat. Eq., 216; *R. R. Co.* v. *Com'rs,* 84 N. C., 504. This charter has been construed by the supreme court of the United States, in *R. R. Co.* v. *Reid,* 13 Wall., 269, which decision is not disturbed by the *Delaware Railroad Tax,* 18 Wall., 208, and is clearly distinguishable. A similar charter considered in *Richmond* v. *R. R. Co.,* 21 Gratt., 604. An exemption of capital stock covers an increase thereof. *State* v. *R. R. Co.,* 30 Conn., 290. The exemption extends to all property in reference to which the stock exists. *R. R. Co.* v. *Allen,* 15 Fla., 637. The exempting clause here is more comprehensive than that construed in *R. R. Co.* v. *Com'rs,* 84 N. C., 487; or in *R. R. Co.* v. *Brogden,* 74 N. C., 707.

The case at bar is thus to be distinguished from all the cases which limit the exemption to property that is absolutely necessary to the working of the road.

The terms *" all property of every description"* are not confined to the property which the company owned at the moment of its creation. It then owned nothing. It must include all property acquired by the company at any time during its existence, either under of its original charter, or by any amendment to the same, or by any authority from the state. This is the natural and reasonable construction. The court has no right to ignore the words " of every description."

The several acts are to be read together, as being *in pari materia*, and together constituting the charter of the company, and so it is as though the several acts had been passed at one time.

*Messrs. Fowle & Snow*, for defendants.

SMITH, C. J. The original act incorporating the Raleigh and Gaston railroad company, passed in 1835, contains the following clause: Section 25 : " All machines, wagons, vehicles and carriages purchased with the funds of the company or engaged in the business of transportation on such railroad, and all the works of said company constructed or property acquired, and all profits which shall accrue from the same, shall be vested in the respective stockholders forever, in proportion to their respective shares ; and the same shall be exempt from any public charge or tax whatever for the term of fifteen years, and thereafter the legislature may impose a tax not exceeding twenty-five cents per annum per share on each share of the capital stock, whenever the annual profits shall exceed six per cent."

The company organized under this charter, having exhausted the funds subscribed for its capital stock, were com-

27

pelled to borrow a large sum under a mortgage of the road
to the state for its indemnity as an endorser of its bonds, in
order to prosecute its work to completion, and pursuant to
said mortgage, was subsequently sold under a decree of the
court of equity of Wake, to the state, the highest bidder
therefor.

At the session of 1850–'51 a new charter was granted,
bearing the same name, under which a reorganization was
effected upon a basis of a capital of $800,000, whereof a
moiety was to belong to the state, the estimated value of the
property surrendered, and the other moiety to the stock-
holders who should subscribe an equal amount, with a sim-
ilar exemption clause and a further provision for the free
transportation of troops in case of domestic invasion or in-
surrection.

By an amendatory act, passed at the succeeding session
of the general assembly, containing a similar clause for the
transportation of troops and munitions of war free from
charge, and providing for an extension of the road to Wel-
don, an exemption clause was re-enacted in these words :
" The said railroad and all engines, cars and machinery, and
all the works of said company, together with all profits
which shall accrue from the same, and *all the property
thereof of every description,* shall be vested in said company,
one half thereof to the use and benefit of the state, and the
other half to the use and benefit of the individual stock-
holders, and the same shall be deemed and held to be per-
sonal estate, and *shall be exempt from any public charge or tax
whatsoever, for the term of fifteen years,* and thereafter the leg-
islature may impose a tax not exceeding twenty-five cents
per annum on each share of its capital stock held by indi-
viduals, whenever the annual profits shall exceed eight
per cent." Acts 1852–'53, ch. 140, § 8.

The stock has been since enlarged to the sum of
$1,500,000, the expenditures for construction in excess of

the capital subscribed being converted into stock by the sanction of the general assembly, given in the act of February 23d, 1861, which on its acceptance is made a constituent part of the charter, and modifies it only so far as its provisions are repugnant to the amendment. Acts 1860-'61, ch. 135.'

In 1871 the Chatham railroad company, whose name was then changed to that of the Raleigh and Augusta Air-Line railroad company, whose tract has been constructed from Raleigh through the counties of Wake, Chatham, Moore and Richmond to its terminus at Hamlet, then in an unfinished condition, and to insure its completion, was authorized to increase its capital stock, making that portion "already authorized," or " any additions to the same as they (the stockholders) may deem advisable, a guaranteed or preferred stock, upon which such interest or dividends may be guaranteed as the directors may deem advisable," and with the assent of the stockholders, to secure such guaranteed interest or dividends by liens or mortgages upon all the property, franchise, and income of the company, and to this end subscriptions were authorized for the additional stock, common, guaranteed or both.

The fourth section of the act permits the Raleigh and Gaston railroad company, or other connecting railroad company " to subscribe to, or purchase stock of any kind of the Raleigh and Augusta Air-Line railroad company," and in orded thereto authorizes the issue of " mortgage bonds " for such amount, in such form, and at such rate of interest as may be deemed proper. Acts 1871-'72, ch. 11.

The plaintiff did accordingly subscribe for 10,000 shares at the par value of $100 each of such preferred stock, paying therefor in funds derived from its own operations and issuing its bonds secured by a conveyance of all its own property for the further sum of $820,000, in the aggregate $1,000,000, all of which has been used in the construction

and equipment of the road to Hamlet, and the company thus aided has by deed of trust conveyed its road, rights, privileges and franchises, and all its works and property of every description to trustees to secure the said guaranteed or preferred stock, and the accruing interest as it becomes due at the specified rate of eight per cent.

This succinct history of the past legislation of the state in relation to the plaintiff and the action taken under it, is sufficient to enable us to understand and dispose of the several exceptions taken by both parties to the rulings of the court below on the matters of law involved in both appeals, to which alone must our consideration be given.

The court finds upon the evidence the following facts, all additional to those already stated, which are deemed material to a proper understanding of the errors assigned:

The Raleigh and Gaston railroad company previous to December 25th, 1867, made an annual profit in excess of eight per centum, but has not since that date. In 1871, it declared a dividend of six per cent. on the capital stock of $1,500,000, distributing among the stockholders the sum of $90,000. The increase of stock was paid for out of the earnings of the road. The preferred stock held in the Raleigh and Augusta Air-Line railroad company is of par value, and the common stock is entirely worthless. The road-bed and real estate of this company and its franchise apportioned among the counties through which the track runs, are assessed in them all in sums making an aggregate valuation of $241,783, except that the road-bed and real estate in Wake of the value of $46,000 are omitted, which added makes a total sum of $287,783 liable to taxation. The rolling stock used in transportation upon the road belongs to the plaintiff and is of the value of $29,500, and it has $85,000 invested in a sinking fund provided to meet its future debts.

Upon these facts the court was of opinion and ruled:

1. That the preferred stock properly assessed at $1,000,-000 is liable to taxation, reduced by deducting therefrom the sum of $287,783 the value of the real estate and franchise already taxed in the several counties, and inserting in the tax list additionally $46,000 the value of the real estate in the county of Wake.

2. That the rolling stock, the sinking fund, and the shares of the capital stock held by individuals in the plaintiff company are, none of them, subject to taxation under the law.

The plaintiff files their exceptions to these rulings:

1. For that there is no evidence to sustain the finding of the value of the preferred stock to be $1,000,000.

2. For that the $180,000 invested in preferred stock were profits accruing from the operations of the road, and exempt under the charter, "from any public charge or tax."

3. For that the preferred stock is in substance a credit, to be diminished by taking from the amount of the indebtedness of the company, by its outstanding bonds on which was raised the money used in payment of the stock.

The county commissioners also except to the rulings of the court and assign as grounds therefor:

1. For that the dividend in 1871 of six per cent. on the whole stock, then increased to 15,000 shares, was in legal effect a compliance with the condition of an 8 per cent. accumulation of profits, when applied to the original and exempted stock, as it existed before the increase.

2. For that the shares should be charged, each, with the one fourth of one per cent. authorized when the profits should be in excess of the specified per centum.

3. For that the preferred stock is not subject to abatement by the real estate and franchise tax.

4. For that the rolling stock and the sinking fund were both proper subjects for the imposing of taxation.

These exceptions will be considered and decided in the order in which they are enumerated.

I. The valuation of the preferred or guaranteed stock : It is not our province to weigh the evidence and deduce therefrom the facts which, in our opinion, it may establish. This duty is imposed upon the tribunal that tried the cause and from whose judgment the appeal removes the cause to this court.

If there is any evidence, that is, evidence reasonably suffi-cient to warrant the finding and of the same import, the finding is conclusive.

It appears from the testimony that there has been ex-pended in the construction of the road between its termini at Raleigh and Hamlet, in length 97 miles, $1,800,000, and the superintendent thinks the work could now be done at a cost of $1,200,000, or two-thirds of that sum. The payments received from the Raleigh & Augusta Air Line railroad du-ring a series of years, commencing with the first payment made in December, 1874, and ending in September, 1881, amount upon a statement of the treasurer of both roads to the sum of $401,596.14. The superintendent and treasurer both estimate the value of the preferred stock at $500,000 or half its nominal value.

Upon this testimony and in the exercise of their own judgment as to the taxable value of this property on the part of the commissioners, (and we have said in the case of *Commissioners* v. *A. & C. A. L. R. R. Co.*, 86 N. C., 541, they are not confined to the estimates of value put upon prop-erty by witnesses), we cannot say there is no evidence war-ranting the conclusion at which they arrived and in which His Honor concurred, as to the assessment of the stock.

II. It is immaterial whether the $180,000 applied to the payment of the stock was derived from the earnings of the plaintiff or from some other source ; for by the investment it lost its character of non-taxable profits, and that form of property into which it was converted is not under the pro-tection of the exempting clause. It would have been a mis-

application but for the enabling act, and this act does not attach the non-liability of profits to the taxing power, after they have passed into other property purchased, and are not in the sense of the statute that which it was intended to relieve from public charges. None is exempt, in our interpretation of the clause of the charter, although the comprehensive words, " all the property thereof of every description," are used, except such as was convenient and necessary for the use of the road itself in accomplishing the ends of its organized existence. The advantages of lateral and feeding roads, rail or other, in augmenting its business may be very great, as is shown in the superintendent's testimony that this road furnishes to the plaintiff about $85,000 of business per annum, subject however to a deduction for operating and other expenses, yet the funds used in obtaining these collateral benefits through the purchase and control of other subsidiary lines of improvement, were not contemplated by the general assembly that granted the exemption to the property of the plaintiff as a company, and needful in the successful prosecution of its own corporate purposes, and we think not within the scope and meaning of the act. It might lead to most mischievous consequences, if we were to extend the immunity to all the property that the company may buy, simply because it will add to its business ; for if so, the company might buy and run transportation wagons diverging from its different depots, and bringing in supplies of produce for the purpose of rail carriage, or steamers to pass up and down the streams crossed by its track in quest of freight, all of which outlay would then escape the burden of taxation altogether. Plainly, in our opinion, the statute does not authorize the exemption in such case, and it is equally manifest it cannot embrace that now claimed to be exempt. *Bank* v. *Tennessee*, 104 U. S. Rep., 493.

III. The stock held by the plaintiff though under a guaranty of the payment of the semi-annual dividend, or interest,

is nevertheless essentially and truly stock, and not a credit to be off-set and diminished by an outstanding indebtedness under the revenue act of 1881, ch. 117, § 8.

In paragraph five of the section, are enumerated, as liable to such reduction, "solvent credits, including accrued interest uncollected, owing to the party, whether in or out of the state," "by mortgage, bond, note, bill of exchange, certificate, check, open account, or whether owing by any state or government, county, city, town, or township, individual, company or corporation." It is also declared that a certificate of deposit in bank and the value of cotton, tobacco or other property in the hands of a commission merchant or agent, shall be deemed *solvent credits* within the meaning of the act. While stocks in incorporated companies are not mentioned by name, nor embraced in any general descriptive words used in the clause, they are distinctly specified as subjects of taxation in the next paragraph (6) which directs to be given in, "shares in national, state and private banks, railroad, canal, bridge or other incorporated company, or joint stock association," at their true value, concluding with a proviso that stockholders in valuing their shares, may deduct their ratable proportion of tax paid by the corporation upon its property as such in this state.

It is obvious from these provisions that no deduction from the value of shares (regarded not as credits but as property) is allowed on account of debts owing by the tax-payer.

The plaintiff's several exceptions are therefore disallowed, and we next proceed to consider those interposed by the commissioners, and in the same order.

I. The first objection is to an alleged misconstruction of the exemption clause in the charter and the consequent ruling that the dividend declared in 1871 of 6 per cent. upon the full capital stock of $1,500,000 was not an annual profit in excess of 8 per cent. on the capital stock of $975,000 existing before the increase, and thus a removal of the im-

pediment to the exercise of the power to impose the twenty-five cent tax on each share.

The act of February 23d, 1861, in direct terms authorizes the addition to the capital by the conversion into stock of the moneys derived from running the road and expended in its construction, constituting the cost of building it. In permitting the conversion, the increased stock necessarily falls under the exonerating provision of the charter, because it is capital stock, representing an equivalent expenditure, and put upon the footing of that originally subscribed and then supposed to be sufficient for the undertaken enterprise, and the exemption applies to "each share of the capital stock held by individuals" until the earnings pass the prescribed limit. Obviously it was the intention of the legislature, as in the original, so in the subsequent investment of funds in the road, to give them immunity from public burdens until a remuneration was afforded from profits, *upon the whole capital* above the specified per centum.

II. The taxation of the shares of stock in the plaintiff corporation disallowed by the court.

There is some ambiguity in the statement of the condition upon which depends the right to levy the small tax upon individual shares—whether, if in any one year the net receipts would admit of a dividend in excess of the prescribed per centum, the condition was fulfilled and extinguished; or the tax could only be levied from time to time, that is, as often as the profits reached the said limit, and not when they fell short. The words of the act seem to favor the latter interpretation, since it says "the legislature may impose the tax" on each share, " whenever the annual profits shall exceed 8 per cent." As successive taxes may be imposed, it would seem to be the meaning of the general assembly to allow it only when the profits reach that sum, thus securing to the shareholder an interest or dividend on his investment, reducible only by the small tax allowed. Otherwise the

tax could be collected when no profit whatever was made, out of which it could be paid.

But it is needless to determine the construction of the act in this regard, since, in our opinion, if the stock be chargeable with the tax, it should under the revenue law be listed by the stockholder himself, and has no place in the list to be charged to and paid by the company. The sixth paragraph to which we have referred and its concluding sentence clearly indicate that this, like any other property belonging to a *resident stockholder,* must be listed and the tax paid by himself, and not by the corporation.

III. The commissioners object further, that the assessed value of the preferred stock should be reduced by the value of the real estate and franchise as taxed separately in the several counties traversed by the road.

The ruling of the court in directing the reduction is obviously made to avoid the imposition of a double tax, since the value of all property owned by a corporation, in whatever consisting, and including the franchise, is the true and fair measure of the value of all its stock, and hence the general assembly permits stockholders in valuing their shares to " deduct their ratable proportion of tax paid by the corporation upon its property as such in this state." § 8, par. 6.

. The section leaves it somewhat uncertain whether the value of the stock is to be reduced by the value of corporate property taxed, and the tax levied upon the difference, or the tax upon the former is to be abated to the extent of the tax upon the latter, but we interpret the latter to be the meaning. The effect of the ruling of the court is to deprive the counties through which the road passes of assessments of the corporate property in each, and transfer them to the county of Wake, while it is, in our opinion, the purpose of the statute to allow the tax-paying shareholder to deduct from the tax on his shares a ratable part of the tax paid upon the corporate property elsewhere by the corporation

itself, but not to withdraw from taxation in other counties such property of the corporation therein as is liable to assessment and taxation.

The result is, that the county of Wake can impose a tax upon the resident stockholder of the full value of the stock, but to be reduced by all the taxes elsewhere levied upon corporate property, so that the residue is the tax which the county is authorized to collect upon the stock.

The consequences of either mode, if the same *ad valorem* tax is levied in each county traversed, to the defendant would be the same; but by that adopted, those counties collect the tax levied therein, and the ratable abatement is in the tax upon the stock to be paid to the county wherein the resident stockholder is taxable.

IV. The exception to the exoneration of the rolling stock used exclusively upon the Raleigh and Augusta Air-Line railroad track, is well taken and must be sustained. For reasons which have been already stated, this property is not so appurtenant to the plaintiff company as to be covered by the exemption, nor can it make any difference with what funds or in what manner this property was acquired. It is wholly employed in operating another road, and not its own. The incidental advantages it affords in keeping up a road that contributes to its own freight list, no more than if the rolling stock were let to an independent and intersecting road, equally useful in result, cannot claim an exemption secured to the plaintiff road, and convenient and useful directly in its own operations.

V. The sinking fund is but a provision to meet a future debt, and as a credit, is absorbed in the large mortgage debt intended to be met. It is therefore properly excluded from the list.

Thus we overrule all the exceptions of the plaintiff, and all those of the commissioners, except that in relation to

the rolling stock of the plaintiff used upon the other road and valued at $29,500.

The judgment from which the plaintiff appeals is in all respects affirmed, and that from which the defendants appeal will be modified in the manner described, and, thus modified, affirmed.

Let this be certified to the superior court of Wake.

PER CURIAM.                              Judgment accordingly.