WALTERS et al. v. WESTERN & A. R. CO. (STEWART, Intervener).

(Circuit Court, N. D. Georgia. June 1, 1895.)

No. 358.

1. TAXATION—EXEMPTIONS.

The state of Georgia, being the owner of a railroad, leased the same to certain persons who were formed into a body corporate and granted immunity from taxation upon the property used for railroad purposes, except as to a tax of one-half of 1 per cent. on their net income. Upon the expiration of the lease, when the property was about to be surrendered back to the state, the assets of the company were placed in the hands of receivers, to wind up its affairs, who thereafter received and held considerable amounts of money and other property. *Held*, that the immunity from taxation ceased with the termination of the lease and expiration of the charter, and that the property in the receivers' hands was subject to taxation.

2. SAME—PENALTY—LACHES.

*Held*, further, that, as the receivers had made no return of the property in their hands, the taxing officers would not be held barred from enforcing their claim because it was not presented within a period fixed by the court for the presentation of claims against the receivers; but, as they had made no application for the payment of the tax, they would not be permitted to exact a penalty for delay in payment.

This was an intervening petition, filed by A. P. Stewart on behalf of the state of Georgia and county of Fulton, and by the city of Atlanta, in the cause of William T. Walters against the Western & Atlantic Railroad Company, to enforce the payment of certain taxes by the receivers appointed in that cause. The receivers demurred to the petition.

A. P. Stewart and L. S. Rosser, for intervener.

Anderson & Colville, for city of Atlanta.

Payne & Tye, for defendant.

NEWMAN, District Judge. Taxation is the rule, and immunity from taxation is the exception. It is governmental policy that all

property should bear its just proportion of the public burden. Acts of the legislature exempting property from taxation are strictly construed, as to the extent of the exemption, in favor of the government and against the exemption. The fact that property is in the hands of a receiver of a court does not exempt it from taxation. The foregoing well-recognized and fundamental rules are stated for the purpose of applying them to the following state of facts: The state of Georgia is the owner of the Western & Atlantic Railroad, a line of road extending from Atlanta to Chattanooga, Tenn. On the 24th day of October, 1870, the legislature of the state passed an act for the lease of this road, and providing for the incorporation of the lessees as a body politic, and granting them certain immunities and exemptions, among which were, as construed by the supreme court of the state, exemption from taxation, except as to a tax of one-half of 1 per cent. on their net income; the exemption to be confined, however, to property used for railroad purposes. The lease in pursuance of this act was executed on the 27th day of December, 1870, the lessees becoming a body corporate by the provisions of the act referred to, under the name of the Western & Atlantic Railroad Company. The road was operated by that company during the lease which, having expired on the 27th day of December, 1890, and the property about to be surrendered back to the state, on the application to this court, by certain shareholders, the assets of the company were placed in the hands of receivers, who were to hold such assets and wind up the affairs of the company for the benefit of the creditors and shareholders. The receivers have had in their hands considerable funds from time to time, but have not returned the same for taxation to the state, county, or city of Atlanta, in which city the office of the receivers is, and where the principal office of the Western & Atlantic Railroad Company was located. The state, county of Fulton, and city of Atlanta now bring their petition in this court and ask to be allowed to intervene in the equity cause to have the amount of the taxes due on the funds in the hands of the receivers ascertained, and pray an order requiring the receivers to pay the same. To this application demurrers have been filed by the receivers, and the question before the court is on these demurrers. The matter for determination is the liability of this property for taxes. The question raised by the demurrers, simply stated, is that, the Western & Atlantic Railroad Company having been exempt from taxation except on its net income, and there having been no net income since the expiration of the lease and its charter, these assets are not subject to taxation at all. It is urged that the state, having invited these lessees to take its property in charge and operate it, and having granted certain immunities in connection with the contract of lease, will not now be allowed, before this fund resulting from its operation can go into the hands of the shareholders, to subject it to taxation. The same contention applies, of course, to the county and city as subordinate to the state. Applying the well-settled rule that exemptions from taxation are strictly construed against the exemption, it is clear that the immunity granted in this instance ceased with the termination of the lease and the expiration of the charter. It would not be ex-

tended beyond its necessary terms. It is said, however, that where the state undertakes to enter into a contract in reference to property it descends from its position as a sovereign, and must be treated as an individual entering into a contract. The authorities cited in support of this view refer to exemptions granted where benefits are received by the state as consideration for the exemption. The lease of the Western & Atlantic Railroad Company was for what must have been treated as a fair rental value of the property, and the exemption from taxation was the same as that granted to the Central Railroad, the Georgia Railroad & Banking Company, and the Macon & Western Railroad, and simply places it on the same footing with other railroads in the state. The legislature does not seem to have intended to do more than to treat it like other railroad corporations. The lease of the property by the state as the owner thereof, and the terms and conditions of the same, was one thing, and as to that, doubtless, the state's act and its contract would be considered as that of an individual. The exemption from taxation, however, was not the act of the state in its capacity as owner of the property, but in its capacity as a sovereign, and no good reason is perceived, under the facts of this case, why the exemption should have a different construction than that of any other tax exemption. Especially is this true when the extent of the exemption was the same as that allowed to several other railroad corporations. Construed in this way, it appears that the period for which the exemption was granted is ended. There is no net income so that the tax of one-half of 1 per cent. can be collected from that source, and no good reason is perceived why the property is not subject to taxation like any other property in the state. Certain statutes of the state, as contained in the Code of Georgia, have been cited in argument. Section 799 is as follows:

"All real and personal estate, whether owned by individuals or corporations, resident or nonresident, are liable to taxation, unless specially exempted."

Section 803 is in this language:

"Lands or other property belonging to citizens of the United States non resident of this state, can not be taxed higher than the property of residents, but all the property of such non residents, whether their property be real or personal, in this state, must pay taxes on the same herein."

This property, if it is subject to taxation at all, must be taxed as a lump sum in the hands of the receivers. It is not a question, such as has been argued, of the taxation of intangible shares in a corporation at the residence of the stockholder, but the question in issue, according to these petitions, is of the taxation of material, visible property. It is, to a large extent, actual money, as alleged, held by the receivers in the state, county, and city claiming the tax. It is not different from any other property in the hands of receivers of court, which all the authorities agree is subject to taxation in the locality where it is held by these officers of court. In my opinion, these receivers should have returned this property for taxation to the state, county, and city; and, having failed to do so, the court will require them to pay such amount as should have

been paid at the proper time. On the 26th day of May, 1893, the court passed an order with reference to the filing of claims against the Western & Atlantic Railroad Company, as follows:

"It being made to appear to the court that this cause has been pending in this court since the 20th day of December, 1890, and all parties having claims against the defendant have had since then to file the same, and it being desirable to end the litigation and distribute the assets as early as possible, it is, upon motion of complainant's solicitor, ordered, adjudged, and decreed that all persons having claims or demands against the late the Western & Atlantic Railroad Company, defendant in said cause, intervene in said cause and file a full and complete statement of their said claims or demands on or before the rules day in August, 1893, so that the same may be heard and adjudged. It is further ordered, adjudged, and decreed that all claims or demands not made as provided herein be and the same are barred from participating in any part of the assets of said the late the Western & Atlantic Railroad Company. It is further ordered, adjudged, and decreed that the receivers in said cause cause notice to be published for a period of sixty days prior to said rules day in August in some one of the daily papers published in the city of Atlanta."

It is contended that, under the terms of this order, these claims for taxes are presented too late. It may be true that the officers charged with their collection have not been as diligent as they might have been in presenting their claims for the same to the court, yet it is equally true that under the view entertained by the court these receivers should have returned the property for taxation, or at least have asked the direction of the court in respect to it. Officers charged with the collection of the state and municipal revenue must depend, to a large extent, upon those whose duty it is to make return of the same. Especially is this true as to the kind of property in the hands of these receivers. These petitions will be entertained, therefore, and the amount of tax due by the receivers on the assets in their hands determined. The court will not, however, entertain these claims for double taxation. The petitions set out that, under the law, persons failing to return their property for taxation in a certain time are subject to double taxation. If the attention of the court had been called to this matter by proper petition it would have been disposed of long ago, and there can be no possible ground, on a petition presented at this late date, to ask for a penalty against these receivers.

An answer has been filed in this case for the complainants in the bill, by their solicitor, which it is unnecessary to consider at present, as the case is now heard on demurrer filed by the receivers to the petitions. It does raise questions of fact which will be important for consideration hereafter as to the extent to which the assets can be taxed. This legal question is raised by the answer, that the funds in the hands of the receivers is net income, and that the net income has already paid its tax from year to year, and should not be subject to additional taxation. This position appears untenable. The company was subject to a tax of one-half of 1 per cent. on its net income during the lease. The lease expired in 1890, and this property has been held during these years in the hands of the receivers, as has been stated, and it seems to be true that it is net income or profit, as claimed, arising from the operation of the railroad by the company; but it comes back to the same question

at last,—that it is property in the hands of receivers of court, as to which there is no exemption if the exemption it had, strictly construed, ended with the lease. The facts of this case are so peculiar and unusual that the decisions which have been cited have been of little use in determining it. It is left after all to be controlled by the general principles stated in the beginning of this opinion. The case has been held up for some time, and doubts have been entertained as to the correct solution of the matter, but if this condition of mind still existed it would not justify the court in deciding against the right to taxation. The existence of the exemption, under all the authorities, must appear beyond a reasonable doubt, to justify its allowance. An extract from the opinion of the court in the case of Bank v. Tennessee, 104 U. S. 493, expresses the well-settled rule on this subject in this way:

"That statutes imposing restrictions upon the taxing power of the state, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed, is a familiar rule. Against the power nothing is to be taken by inference and presumption. Where a doubt arises as to the existence of the restriction, it is to be decided in favor of the state."

It certainly cannot be said that the right of this property in the hands of the receivers to be exempt from taxation is free from doubt. The conclusion is that the assets in the hands of these receivers are subject to taxation, but not to double taxation or penalty, and that the order of May 26, 1893, will not be enforced as against these claims. The demurrer will be overruled except as to the claim of double tax.