## SHELBY COUNTY *v.* UNION AND PLANTERS' BANK.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

No. 766.    Argued January 20, 21, 22, 1896. — Decided March 2, 1896.

A clause in the charter by a State of a banking corporation requiring it to "pay to the State an annual tax of one half of one per cent on each share of capital stock which shall be in lieu of all other taxes," while it limits the amount of tax on each share of stock in the hands of the shareholders, does not apply to or cover the case of the capital stock of the corporation or its surplus and accumulated profits, but such capital stock, surplus and accumulated profits are liable to be taxed as the State may determine.

The previous cases examined, and shown (especially *Farrington* v. *Tennessee*, 95 U. S. 679, and *Gordon* v. *Appeal Tax Court*, 3 How. 133) not to be inconsistent with the above decision.

THE case is stated in the opinion.

*Mr. S. P. Walker*, (with whom were *Mr. C. W. Metcalf* and *Mr. F. T. Edmondson* on his brief,) for the State of Tennessee and the County of Shelby, cited the following Tennessee cases : *Memphis* v. *Farrington*, 8 Bax. 539; *State* v. *Union Bank*, 9 Yerg. 488; *Memphis* v. *Ensley*, 6 Bax. 553; *Nashville Gaslight Co.* v. *Nashville*, 8 Lea, 407; *Street Railroad* v. *Morrow*, 3 Pickle, 406.

*Mr. William H. Carroll,* (with whom was *Mr. Isham G. Harris* on the brief,) for Union & Planters' Bank, cited the following Tennessee cases: *Knoxville Railroad* v. *Hicks,* 9 Bax. 442; *State* v. *Butler,* 13 Lea, 400; *State* v. *Butler,* 2 Pickle, 614; *University of the South* v. *Skidmore,* 3 Pickle, 156; *Memphis* v. *Union & Planters' Bank,* 7 Pickle, 546; *Memphis* v. *Memphis City Bank,* 7 Pickle, 574; *Hazen* v. *Bank,* 1 Sneed, 115; *Memphis* v. *Farrington,* 8 Baxter, 539; *Tennessee* v. *Union Bank,* 9 Yerger, 488; *State* v. *Nashville Savings Bank,* 16 Lea, 111.

Mr. Justice Peckham delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court of the United States for the Western District of Tennessee, granting an injunction at the suit of the Union & Planters' Bank to restrain the municipal authorities from collecting any tax laid upon the surplus of the bank, on the ground that such surplus is exempt under a clause in the charter of the bank similar to the one discussed in the above cases of the *Bank of Commerce, ante,* 134. The Circuit Court granted the injunction and permanently enjoined the municipal authorities from the collection of the tax. They have appealed to this court.

There are two grounds, either of which, if decided in favor of appellants in this case, would result in upholding the validity of the tax upon the surplus: First, if it should be held that by the true interpretation of the charter the exemption, while applying to the shares of stock in the hands of the shareholders, does not extend to the corporation itself, the tax would be valid; second, even if the tax on the capital stock were void, that upon the surplus might still be upheld on the authority of the case of the *Bank of Commerce, ante,* 134. We have already held in that case that a tax on the surplus was valid, but the question whether a tax on the capital stock of the bank was valid could not be raised there, because the case was before us on a writ of error taken to a state court, and the question in the state court was decided in favor of the exemption claimed by the bank. This being an appeal from

a judgment of the United States Circuit Court, both questions are open for our decision. We think it, therefore, proper to here decide the question first above stated.

Various decisions of the courts of Tennessee have been cited by counsel on both sides as to the meaning of the exemption clause, whether or not it covered the capital stock and the shares also. Generally, the courts of that State held before the decision by this court of the *Farrington case*, that the charter tax was laid upon the corporate capital stock, and the exemption was of that stock from any further tax. Subsequently to the decision in that case the state courts have held that under the construction given to the clause in the *Farrington case* and in *Bank* v. *Tennessee*, 104 U. S. 493, the tax was on the shares, and the exemption covered both the capital stock and the shares thereof. The decision giving exemption to both classes of property was adjudged alone upon the authority cited. In such a case as this, where we are to construe the meaning of the clause of the statute as to what contract is contained therein, and whether the State has passed any law impairing its obligation, we are not bound by the previous decisions of the state courts, except when they have been so long and so firmly established as to constitute a rule of property, (which is not the case here,) and we decide for ourselves independently of the decisions of the state courts, whether there is a contract and whether its obligation is impaired. *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244, 256; *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665–667; *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486, 492.

While according to the decisions of the Supreme Court of Tennessee the respect which is most justly due them on account of the high character of that tribunal, nevertheless the responsibility is upon us to determine the question independently, and we cannot agree with that court in its construction of the decisions of this court in the two cases mentioned. Indeed, one of the judges of the state court said in the course of an opinion, *Memphis* v. *Union & Planters' Bank*, 7 Pickle, 546, 553, that since the *Farrington case* the court had recog-

nized the decision and had, at the same time, adhered to its own former decisions that no *ad valorem* tax could be lawfully laid on the capital stock, and thus the effect of the two decisions, the one Federal and the other state, was that both classes were exempted. Other judges said they were exempted by reason of the Federal decisions.

We stated in the *Bank of Commerce case, ante,* 134, that the tax provided in this charter is laid upon the shares of stock in the hands of the shareholders, and they are exempt from any further taxation on account of their ownership of such shares. In that respect we followed the case of *Farrington* v. *Tennessee,* 95 U. S. 679, and we refused in the *Bank of Commerce case* to overrule or distinguish it; but it is claimed on the part of the appellee herein that the *Farrington case* also decided that the charter tax is in lieu of all other taxes, not only upon the shares in the hands of the shareholders, but that it exempts the corporation and all its property from any further taxation. We cannot give so broad an effect to the decision in the *Farrington case.* The question of the exemption of the corporation and its property from taxation did not arise in that case, and there was no adjudication of that question by its decision. Farrington was the owner of certain shares of stock in the bank, and the State and the county of Shelby each claimed the right, under the law, to assess taxes against him by reason of his ownership of those shares, at the same rate that taxes were assessed and levied upon other taxable property. He resisted the payment of the taxes upon the ground that by virtue of the exemption clause in the charter the bank, its franchise, its capital stock, and also the shares of stock of the individual stockholders, were subject to no taxation other than at the rate specified in the charter.

Although in setting forth the grounds of his resistance to the payment of the tax, Farrington stated that the bank, its franchise and its capital stock, were not subject to taxation, still that was not a material question. If the shares of stock owned by him were not subject to taxation in his hands, that was sufficient for him, and the question of the exemption of property of the corporation would not be involved. The

corporation was not a party to the suit, and although in the opinion written upon the decision of the question whether the shares were liable to taxation in his hands, it may have rather been assumed that the stock was not subject to taxation as against the corporation, or that the whole stock was exempt in whosesoever hands it was, the matter actually decided was the exemption from taxation of these shares in the hands of the shareholders. In the suit that was instituted it was agreed that if in any event the decision was adverse to Farrington, judgment should be rendered against him for a certain number of dollars, the amount of the tax assessed against him, and if the decision should be in his favor, then the judgment was to be that the taxes were illegally assessed, and that said shares of stock were to be exempt from all other taxation, except the one half of one per cent to the State, as provided for in the tenth section of the bank's charter, and the collection of any further tax was to be enjoined. The trial court rendered a decree enjoining the collection of the tax, which was reversed by the Supreme Court of the State, on the ground that the shares of stock were not the property or thing exempted, and it was, therefore, adjudged that Farrington should pay to the State the sums of money assessed upon his shares. Farrington thereupon sued out a writ of error, and coming into this court the judgment of the Supreme Court of Tennessee was reversed, and it was held that the charter tax was upon the shares of stock in the hands of its shareholders, and that they were consequently exempt from the payment of any further tax.

There are undoubtedly some expressions in the opinion of Mr. Justice Swayne which lend color to the idea that, in his belief, not only were the shares in the hands of the shareholders exempt from any further taxation than that imposed by the charter, but that the property of the corporation was itself exempt from any taxation other than that provided for in that section; the latter question, however, was not before the court and was not decided by it, and we are of opinion that, assuming that the charter tax was laid upon the shares of stock in the hands of the shareholders, the exemption from

further taxation applies to the subject which was taxed under the charter, and is not of any greater scope, and that it would not, therefore, include the exemption from taxation of either the capital stock or the surplus, which is the property of the corporation itself. We come to this conclusion because of the fact, well established by the decisions of this as well as many state courts, that there is a clear distinction between the capital stock of a corporation and the shares of stock of such corporation in the hands of its individual shareholders. So separate are these properties, and so distinct in their nature, that the taxation of the one property is not the taxation of the other. This is no new doctrine, and the distinction between the two properties was recognized by the Supreme Court of Tennessee as long ago as in the case of the *Union Bank* v. *State*, 9 Yerger, 490, decided in 1836. It was held that, under the clause of the charter there under consideration, any further tax on the capital stock than that which was provided for in the charter itself was void, but that the State might tax the shares of stock in the hands of individuals notwithstanding the exemption from further taxation on the capital stock.

We do not admit the claim made by the counsel for appellee, that the *Farrington case* must have decided the exemption of the stock of the corporation, because in the case of *Wickes* v. *State of Tennessee*, (mentioned in a note to the *Farrington case* at page 690,) as is claimed, the exemption was of the capital stock of the corporation which was held nevertheless to come within the principle of the main case decided. There was no material difference in the meaning of the exemption clause in the various cases mentioned in the note to the *Farrington case*. Those clauses were of substantially the same import as that in the *Farrington case*, and they are set forth in the dissenting opinion of Mr. Justice Strong at page 692 of the report. The whole court was of one opinion upon the subject, that there was no substantial difference in the extent of the exemptions contained in the several charters, although there was some difference in their phraseology, but the question was, as stated by Mr. Justice Strong, which of the parties was to

receive the benefit of the exemption, namely, was it to be the corporation, or was it intended for the individual stockholder. It was upon that question that the court divided; those in the minority believing that the exemption was intended in each case for the corporation, while the case as actually decided holds that the individual shareholder was entitled to the benefit from the exemption, and there is no adjudication that that exemption extended also to the corporation and its property.

Other cases in this court are cited by counsel for the appellee, which it is claimed are authority for their proposition of exemption of the corporate property from further taxation. Among them is the *State Bank of Ohio* v. *Knoop*, 16 How. 369. The sixtieth section of the general banking law of the State of Ohio, passed in 1845, required the bank to set off six per cent of each semi-annual dividend made by it for the use of the State, which sum or amount so set off was to be in lieu of all taxes to which the company or stockholders therein would otherwise be subject. Subsequently, the State passed an act providing for other and different taxation. The bank refused to pay, whereupon the treasurer of the county brought an action to enforce payment of such tax, and it was claimed on the part of the treasurer that the provision in the general banking law, above mentioned, was not a contract fixing the amount of the tax, but was a law prescribing a rule of taxation until changed by the legislature. This court held that it was a contract, and that as the operation of the law providing for a different tax increased the tax upon the bank, it was protected by the terms of its contract, and was not bound to pay that increase. The claim was also argued in that case, on the part of the State, that it was not within the power of any legislature to tie up the hands of subsequent legislatures in the exercise of the powers of taxation, and hence the provision in question, if construed as an attempt to accomplish that end, must be held to be void. But it was held in this court that the legislature had the power to pass the act in question, and that the bank was entitled to be protected from any further or other taxation. The question, which of the two properties, the bank or the shares of stock in the hands

of the shareholders, was liable to taxation was not in the case, and was not decided, but the language of the statute is totally different and much more comprehensive than the language of the charter now before the court. In the Ohio case the payment was to be in lieu of all taxes to which the company *or the stockholders* would otherwise be subject, embracing both propositions. The case is certainly no authority for the claim made on the part of this appellee.

The next case is that of *Dodge* v. *Woolsey*, 18 How. 331. This is substantially the same case as that just above mentioned, with the sole difference that the State in 1851 adopted a new constitution, in which it was declared that taxes should be imposed upon banks in the mode which an act subsequently passed in 1852 purported to carry out. An assessment was made upon the bank which would result in a larger tax than that provided for in the charter, and one of the shareholders in the bank commenced a suit in equity against the directors to prevent them from paying the tax, on the ground that the bank was exempt from any such payment, and that it would be a misapplication of the capital or profits of the bank if either were taken to pay such tax. This court again decided as to the validity of the contract in favor of the bank, and that there was no material distinction between the two cases arising from the fact that the State of Ohio had adopted a new constitution in the meantime, and under that had passed an act providing for a different method of assessing the property of the bank. This was held to be wholly immaterial as having no effect upon the validity and binding force of the original contract for exemption contained in the charter of the bank.

The same question again came before this court in *Jefferson Branch Bank* v. *Skelley*, 1 Black, 436, the only purpose of which case seems to have been to ask of this court a reëxamination of the questions already decided and a reversal of its judgments already twice rendered. This was refused, and the opinion closed by citing the language of the Chief Justice in Knoop's case as follows: "I think that by the sixtieth section of the act of 1845, the State of Ohio bound itself by a con-

tract to levy no higher tax than the one there mentioned upon the banks or stocks of banks organized under that law during the continuance of their charters. In my judgment, the words used are too plain to admit of any other construction." Nothing in those cases, construing the charter of the Ohio bank, affords any countenance to the claim made here.

One other case from this court is cited, that of *Gordon* v. *Appeal Tax Court*, 3 How. 133, 147. The question in that case depended upon the constitutionality of a tax imposed by the legislature of Maryland in 1841, it being alleged to be in violation of a contract made by the legislature in 1821. The legislature of Maryland in 1821 continued the charters of several banks to the year 1845, upon condition that they would make a road and pay a school tax, and it was provided that if any banks should accept and comply with the terms and conditions of the act the faith of the State was pledged not to impose any further tax or burden upon them during the continuance of their charters under the act. Subsequently a tax was levied upon the stockholders as individuals, according to the amount of their stock, and it was held that by the legislation of 1821 continuing the charters of the banks upon conditions which had been accepted and performed by the banks, a contract was created relating to something beyond the franchise, and that it exempted the stockholders from the tax which the State endeavored to levy upon them thereafter.

This case lends some color to the claim made by the appellee, and yet we do not think it is decisive in favor of that claim. It was a peculiar case. The banks were all in existence, and the question was in regard to their accepting a condition upon compliance with which their charters were to be extended. The act of acceptance, it was stated, would be that of the individual shareholders. The tax was on the shares, and the question which was made was whether the act of the legislature of Maryland of 1841, in imposing a tax upon those shares, impaired the obligation of the contract theretofore entered into between the bank and the State of Maryland. There were two classes of banks, designated as the *old* and *new* banks. The *old* were those which were chartered previous to

the year 1821, and the *new* those which were chartered after
the year 1830, and taxes had always, since the incorporation
of the banks, been assessed upon their real and personal prop-
erty in all the cities and counties of the State in the same
manner as upon property of the same kind belonging to indi-
viduals, and they had always been paid by the banks up to
this time. Mr. Justice Wayne in the course of his opinion
puts the question: " Does it (the act in question) exempt the
respective capital stocks of the banks, as an aggregate, and
the stockholders from being taxed as persons on account of
their stock? We think it does both. The aggregate could
not be taxed, without its having the same effect upon the
parts, that a tax upon the parts would have upon the whole.
Besides, the legislature, in proposing the terms and conditions
of the act, used the word ' banks' with reference to the con-
sent or acceptance of the act being given by the stockholders,
according to a fundamental article of their charters. The
acceptance of the act could only be made by the stockhold-
ers. They did accept, and the State recognized it as the act
of the stockholders. It could not have been given or been
recognized in any other way. True it is, that when accepted
and recognized, it became a contract with the banks. But its
becoming a contract with the banks determines of itself noth-
ing. We must look in what character or by whose assent it
was to become a contract with the State, to ascertain the in-
tention of the legislature in making the pledge, ' that upon
any of the aforesaid banks accepting of and complying with
the terms and conditions of this act, the faith of the State is
hereby pledged not to impose any further tax or burden upon
them during the continuance of their charters under this act.' "

The Justice then proceeded in the opinion to discuss the
question as to what was meant by the language of exemption,
and it was claimed that by reason of the peculiar nature of
the act of acceptance, which was that of the stockholders as
distinguished from the corporate action of the bank by the
board of directors, the exemption was offered and directed to
that authority which could accept the condition and perform
it, namely, the stockholders themselves, and hence it was

worked out that the meaning of the legislature, under the circumstances of that case, was to exempt from further taxation the shares of stock in the hands of the shareholders.   An examination of this case shows that the question of the exemption of both the corporation and the shareholders did not technically arise, although in the course of his opinion Mr. Justice Wayne gives an exemption to both, as above quoted. That case has been the subject of criticism in several instances, notably in the case of *People* v. *Commissioners*, 4 Wall. 244, and in *New Orleans City &c. Co.* v. *New Orleans*, 143 U. S. 195, and cases therein cited.   Giving to the *Gordon case* the full weight of authority for the point actually decided, it does not hold that language, such as we have in the case under consideration, operates to exempt both the capital stock of the corporation and the shares of stock in the hands of its shareholders from all taxation beyond that mentioned in the charter, and we are entirely unwilling to unnecessarily extend the authority of that case so as to cover the question here. Long after that case was decided this court in many cases, notably that of *Van Allen* v. *Assessors*, 3 Wall. 573, and *People* v. *Commissioners*, 4 Wall. 244, recognized the separate and distinct character of the two properties, the capital stock and the shares thereof in the hands of individual shareholders, and such separate property in our opinion is strong proof of the limitation of the exemption to the property which is taxed.

Another case decided in this court is that of *Bank* v. *Tennessee*, 104 U. S. 493.   That was a case where the questions arose under this same general statute of exemption.   The taxing authorities had taxed the bank on all its real estate, consisting of its banking house, a portion of which only it used for the transaction of its own business and it rented the balance, and it was taxed also for three other pieces of real estate bid in by it upon sales under trust deeds to secure indebtedness.   The charter provided that the bank might "purchase and hold a lot of ground for the use of the institution as a place of business, and at pleasure sell and exchange the same, and may hold such real or personal property or estate as may be conveyed to it to secure debts due the institution, and may

sell and convey the same." The Supreme Court of the State held that while the bank was not liable to be taxed on that portion of its building used by it for the transaction of its business, it was liable for the taxes on the remainder, and also on the other real estate purchased by it. The bank appealed from the decree of the state court, claiming an exemption of the entire property from taxation under its charter. The State did not appeal, although the decree of the court held a portion of the property non-taxable. It will thus be seen that the only question open for review here was, whether the portion actually taxed was exempt, and this court was of the same opinion as the Supreme Court of Tennessee, and held that as to the portion of the property not used for banking purposes, and as to the other real estate of the bank, it was not exempt from the payment of a tax thereon. The fact of the exemption from taxation of that portion of the property used by the bank in its business seems to have been assumed without argument or decision by this court. There is nothing in that case which affords support to the contention here.

Nor is there anything in the case of *Tennessee* v. *Whitworth*, 117 U. S. 129, tending to show that the court in the case of *Farrington* v. *Tennessee*, 95 U. S. 679, held that the exemption covered both properties, the corporation and the shares. Mr. Chief Justice Waite in the *Whitworth case*, on page 136, said in speaking of the *Farrington case*, that the question was whether the clause in the charter, there quoted, exempted the shares in the hands of the stockholders from any further taxation by the State. He said: "The court, three Justices dissenting, held that it did, because, as the charter tax was laid on each share subscribed, the further exemption must necessarily have been of the shares in the hands of the holders, although the tax as imposed was payable by the corporation. In all cases of this kind the question is as to the intent of the legislature, the presumption always being against any surrender of the taxing power." No comfort can be extracted from the remarks of the Chief Justice as even tending to show that the exemption clause covered both the property of the corporation and the shares of stock in the hands of individual shareholders.

We have found no case in this court which is authority for the proposition, that language, such as is under consideration in this case, exempts from further taxation both the capital stock of the corporation and the shares of stock in the hands of individual shareholders. As the *Farrington case* decides that this language does import that the charter tax is laid upon the shares in the hands of individual shareholders, and that those shares are exempt from further taxation, that question is set at rest, and there being nothing in any case which extends that language to both properties, we hold that when it is made applicable to the separate shares in the hands of individual shareholders, it does not apply to or cover the case of the capital stock of the corporation, and that such stock is liable to be taxed, as the State may determine.

This determines the liability of the capital stock of the Union and Planters' Bank to taxation, and of course it overrules any claim on the part of that bank for exemption from taxation of its surplus or accumulated profits. The question whether such surplus could be taxed if the capital stock itself were to be regarded as exempt has also been decided in the preceding case of the Bank of Commerce. The decree of the Circuit Court must, therefore, be

*Reversed, and the cause remanded to that court with directions to dismiss the bill with costs.*

MR. JUSTICE WHITE dissented.