## STATE v. BANK OF COMMERCE.

### (*Jackson.* June 21, 1895.)

1. TAXATION. *Exemptions to corporations valid under Constitution of 1834.*

Doctrine reaffirmed that, under Constitution of 1834, the Legislature had power to grant an exemption from taxation that constituted a contract binding on the State, the obligation of which could not be impaired by subsequent legislative enactment or constitutional provision. (*Post, p. 226.*)

Constitution construed: Art. I., § 20; U. S. Const., Art. I., § 10.

Cases cited and approved: Memphis v. Farrington, 8 Bax., 541; State v. Butler, 13 Lea, 400; State v. Butler, 86 Tenn., 614; Memphis v. Bank, 91 Tenn., 549; 4 Wheat., 519; 95 U. S., 679.

2. SAME. *Not double taxation.*

Doctrine reaffirmed that taxation of capital stock to the corporation and of the shares of stock to its stockholders is not double taxation. Capital stock and shares of stock are separate and distinct property interests, and form separate and distinct subjects of taxation. (*Post, pp. 226, 227.*)

Cases cited and approved: Memphis v. Bank, 91 Tenn., 549; Union Bank v. State, 9 Yer., 493; Street Railroad Co. v. Morrow, 87 Tenn., 406; 95 U. S., 687; 117 U. S., 135; 119 U. S., 277.

3. SAME. *Construction of exemptions strict.*

The rule of strict construction of charter exemptions from taxation quoted, as it has been expressed by different Courts and Judges. .(*Post, pp. 227, 228.*)

Cases cited and approved: Memphis v. Bank, 91 Tenn., 550; State v. Butler, 13 Lea, 406; Wilson v. Gaines, 9 Bax., 551; 109 U. S., 398; 143 U. S., 195; 16 How., 435; 18 Wall., 226; 21 Wall., 498; 95 U. S., 686; 117 U. S., 136.

4. PRACTICE. *Records of another Court examined, when.*

When the judgment or opinion of a Court is in question, the original record may be examined to ascertain accurately what

State *v.* Bank of Commerce.

was before the Court, and what was intended to be decided. (*Post, p. 231.*)

Cases cited and approved: 16 How.. 369, 401; 152 U. S., 301; 146 U. S., 302.

5. RES ADJUDICÀTA. *Of suit for taxes.*

A judgment adverse to the claim for taxes for one year constitutes no bar to a suit for taxes of a subsequent year. (*Post, p. 231.*)

Cases cited and approved: 94 U. S., 351; 144 U. S., 610; 152 U. S., 301.

6. CORPORATIONS. *Charter exemption from taxation construed.*

The capital stock, and not the shares of stock, is exempt from taxation, under a charter providing that: "The said institution (corporation) shall have a lien on the stock for debts due it by the stockholders, before and in preference to other creditors, except the State for taxes, and shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes." (*Post, pp. 224, 225, 230–234.*)

Cases cited: Union Bank *v.* State, 9 Yer., 489; Memphis *v.* Farrington, 8 Bax.. 539; Bank *v.* McGowan, 6 Lea, 705; Memphis *v.* Bank, 91 Tenn., 547.

7. SAME. *Charter not void for failing to fix capital stock.*

The mere failure of a corporate charter to fix a maximum for capital stock, does not necessarily render it void, as opposed to public policy. (*Post, pp. 235–237.*)

Case cited: State *v.* Butler, 13 Lea, 407.

8. SAME. *Exemption attaches to increased capital stock.*

The prohibition of the Constitution of 1870 against exemptions from taxation does not prevent the exemption of a valid increase of the capital stock of a corporation made after 1870, under express authority contained in a charter granted prior to 1870, which exempted the capital stock from taxation. (*Post, pp. 235–237.*)

Constitution construed: Art. XI., § 8 (1870).

Cases cited and approved: Memphis *v.* Bank, 91 Tenn., 586.

9. SAME. *Surplus and undivided profits not exempt as capital stock.*

Surplus and undivided profits of a bank are not exempt from tax-

State *v.* Bank of Commerce.

ation by the terms of a charter exempting capital stock. (*Post*, *pp. 237–243.*)

Cases cited and approved: 61 N. W. Rep., 851; 34 N. J., 489; 4 Jones (N. C.), Eq., 287; 47 Mo., 465; 3 How., 133; 5 Ire., 510; 2 Houston (Del.), 99.

10. SAME. *Authority to assess surplus to bank.*

The assessment for taxation of the surplus and undivided profits of a bank is authorized under the general provisions of the assessment laws declaring that, "all property" shall be taxed, and that "the surplus and undivided profits" in banks shall be assessed to them. (*Post, pp. 243, 244.*)

Acts construed: Acts 1887, Ch. 2, § 1; § 7, subsec. 10; § 14. Acts 1891, Ch. 26, § 3 (Ex. Sess.).

---

FROM SHELBY.

---

Appeal from Chancery Court. of Shelby County. STERLING PIERSON, Ch.

METCALF & WALKER, C. WEATHERFORD, and F. T. EDMONDSON for Complainants.

MORGAN & McFARLAND, W. H. CARROLL, and J. A. TAYLOR for Defendants.

GEO. GILLHAM, Sp. J. These cases involve substantially the same issues, and may be decided in one opinion. The first is a bill in equity, in name of the State, for use of the city of Memphis, to recover from the Bank of Commerce *ad valorem* taxes on its capital stock for. the years 1887 to 1894, in-

clusive; taxes for the years 1892, 1893, and 1894 upon the surplus and undivided profits of the bank during those years; a privilege tax of $1,000 per year from 1889 to 1894, inclusive, and from the stockholders of the corporation taxes on the shares of stock held by them respectively during the years 1887 to 1894, inclusive.

The second is a similar bill upon part of the State of Tennessee and county of Shelby, covering a part of the same period. The taxes sued for, exclusive of the privilege tax, aggregate the sum of about $116,000. By stipulation of the parties, one shareholder is made a defendant to represent all the shareholders, and, in the event of a decree against him, the same to be as established against all the stockholders, and a decree to be entered against the corporation.

A demurrer was interposed by the defendants, setting up a claim of exemption from all taxation under the terms of the charter, either upon the shares of . stock or the capital stock, defendant, bank, having paid the charter tax.

By agreement of the parties, the cases were regularly brought to final hearing, whereupon the Chancellor sustained the demurrer, and dismissed the bills, from which decree complainants in both cases have appealed.

Defendants claim complete immunity from these taxes by reason of a provision in its charter, in words as follows: "The said institution shall have

a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes, and shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes."

The bills claim : First, that the charter tax of one-half of one per cent. was laid on the capital stock, leaving the shares of stock subject to general taxation in the hands of the shareholders; second, that if this be not the correct construction, then the charter tax was laid on the shares of stock, leaving the capital stock and franchise taxable.

The contention of the defendants is, that the charter tax is on the shares of stock, and that both shares of stock, capital stock, and franchise are absolutely exempt from all taxation, except the charter tax of one-half of one per cent.

Complainants sue both the corporation and the shareholders, and seek alternative relief dependent upon the construction which may be given this provision of the charter. The bills are so framed, and the cases so presented, that relief may be given either against the corporation or the shareholder, in so far as the taxes have been imposed and valid assessments made.

By an Act of the Legislature of this State, passed February 29, 1856, the Gayoso Savings Institution, and the Chattanooga Savings Institution, were created bodies politic and corporate, and by the third clause

15—11 P

of that Act each was given the powers, rights, privileges, and immunities expressed in the clause above quoted. By subsequent legislation the name of the Chattanooga Savings Institution was changed to "The Bank of Commerce," and its *situs* moved to Memphis.

It has been adjudicated and settled by this Court that the Bank of Commerce has and enjoys all the rights, privileges, powers, and immunities of the Chattanooga Savings Institution; that it is in truth that institution under a new name. *State* v. *Butler*, 2 Pickle, 614.

The charter was granted under the Constitution of 1834, when the Legislature had the power to grant such immunity from taxation, and is a contract by which the State is bound, the obligation of which may not be impaired by subsequent legislation or constitutional provision. Constitution of United States, Art. I., Sec. 10; *Dartmouth College* v. *Woodward*, 4 Wheat., 519; *Farrington* v. *Tennessee*, 95 U. S., 679; *Memphis* v. *Farrington*, 8 Bax., 541; *State* v. *Butler*, 13 Lea, 400; *State* v. *Butler*, 2 Pickle, 614; *Memphis* v. *Bank and Insurance Companies*, 7 Pickle, 549; *Union Bank* v. *State*, 9 Yer., 490; Constitution of Tennessee, Art. I., Sec. 20.

"Shares of stock and capital stock are separate and distinct property interests, and form separate and distinct subjects of taxation." The taxation of both is not double taxation. *Memphis* v. *Bank and*

State v. Bank of Commerce.

*Insurance Cos.*, 7 Pickle, 549. To same effect are: *New Orleans* v. *Houston*, 119 U. S., 277; *Farrington* v. *Tennessee*, 95 U. S., 687; *Union Bank* v. *State*, 9 Yer., 490; *Street R. R.* v. *Morrow*, 3 Pickle, 406; *Memphis* v. *Ensley*, 6 Bax., 406; *Tennessee* v. *Whitworth*, 117 U. S., 135.

The rule that taxation shall be uniform, and that all property shall bear its just portion of the burden imposed by law for the public good, being so manifestly just, it follows that, "he who claims an exemption from his share of the common burden, must justify his claim by the clearest grant of organic or statute law." *Memphis* v. *Bank and Ins. Cos.*, 7 Pickle, 550. The right of taxation will not be held to have been surrendered (as expressed by Chief Justice Taney) "unless the intention to surrender is manifested by words too plain to be mistaken." *Ohio Ins. Co.* v. *Debolt*, 16 How., 435. "If a doubt arise as to the intent of the Legislature, that doubt must be solved in favor of the State." *The Delaware R. R. Tax*, 18 Wall., 226; *Memphis* v. *Bank and Ins. Cos.*, 7 Pickle, 550. "The language in which the surrender is made must be clear and unmistakable." *Erie Railway Co.* v. *Penn.*, 21 Wall., 498, 499. "When exemption is claimed, it must be shown indubitably to exist." *Farrington* v. *Tennessee*, 95 U. S., 686. The presumption is always "against any surrender of the taxing power." *Tennessee* v. *Whitworth*, 117 U. S., 136. The same rule is announced in *State* v. *But-*

State *v.* Bank of Commerce.

*ler*, 13 Lea, 406; *Memphis Gaslight Co.* v. *Taxing District*, 109 U. S., 398; *New Orleans R. R. Co.* v. *New Orleans*, 143 U. S., 195. In *Wilson* v. *Gaines*, 9 Bax., 551, Judge Turney, for this Court, says: ''Exemptions from taxation are contrary to public policy, and can only be granted in clear and unmistakable terms. They are not creatures of intendment or presumption. If the language in which they are claimed to be granted leaves it doubtful, the benefit of the doubt must be given to the State, the life of which is taxes.''

It is equally certain that, in construing such grant, it is our duty to see that the contract between the State and the corporation is sustained and enforced, that nothing which has been granted shall be taken away. The idea is well expressed by Mr. Justice Swayne in *Farrington* v. *Tennessee*, 95 U. S., 682: ''A compact lies at the foundation of all national life. . . Spotless faith in their fulfillment honors alike communities and individuals.'' The defendants mainly rely upon the case of *Farrington* v. *Tennessee*, 95 U. S., 679, as conclusive of the questions here raised, and base their contentions on the fact that this charter (with others) was construed in that case. The opinion was pronounced in the case of the Union & Planters' Bank, and the construction was primarily of the exemption clause contained in the charter of that corporation. Several cases were heard with that of the Union & Planters' Bank, and were disposed of by the same opinion, as ap-

pears by a footnote at page 690. The charter of the Bank of Commerce was there construed under the style of *Wicks* v. *Tennessee*, and the language of Mr. Justice Swayne in disposing of the cases heard with the principal case, as given by the reporter, is as follows: "These cases are all disposed of by the opinion in *Farrington* v. *Tennessee, supra,* 679. The questions are substantially the same as in that case, and the results must be the same." Defendants construe that case as holding that the charter tax was laid on the shares of stock in the hands of the shareholders, and that the tax is in lieu of all other taxes, either on shares of stock or capital stock, franchise, etc. Complainants concede the first, but dispute the second proposition, and contend that the adjudication in that case goes no further than to settle that the charter tax is on the shares of stock, and that the shares are exempt from all further or other taxation. They further contend that when the case was under consideration by the Supreme Court of the United States in the Farrington case, the full text of the exemption clause was not set forth in the agreed statement of facts upon which the case was heard; that certain material parts of said clause were omitted from the agreed stipulation, and that the present case is a new one, which requires another and a different construction of defendant's charter from that given in the Farrington case, 95 U. S., 679; that the correct construction of the charter in full, is that the charter tax is

laid on the capital stock, leaving the shares of stock in the hands of the stockholders subject to general taxation.

These questions have been argued orally and upon briefs by counsel for the respective parties, with consummate ability, and we have given them that careful consideration which the large interests and important questions involved justify and demand. Keeping in view the elementary canons of construction before announced, we dispose of the issues raised upon these records. The exemption clause of the charter of the Bank of Commerce, correctly copied, is: "The said institution shall have a lien on the stock for debts due it by the stockholders, before and in preference to other creditors, except the State, for taxes, and shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock, which shall be in lieu of all other taxes."

The language of the charter construed by the Supreme Court in the Farrington case, as set out at page 681, is: "The said company shall pay to the State an annual tax of one-half of one per cent. on each share of the capital stock subscribed, which shall be in lieu of all other taxes."

Bringing the two clauses thus into juxtaposition, it will be seen that the first thirty-one words of the correct copy are omitted from the latter, and that two words—"the" and "subscribed"—appear in the

latter copy which are not in the charter of the Bank of Commerce.

The same error or omission in quoting the charter of this bank occurs, in substance, in *Memphis* v. *Farrington*, 8 Bax., 541 (being the same case reported in 95 U. S., 679); *Bank of Commerce* v. *McGowan*, 6 Lea, 703, and *State* v. *Butler*, 15 Lea, 105 (S. C., 2 Pickle, 617).

That we may look to the original records to ascertain accurately what · was before the Court, and what was intended to be decided, we think, upon authority, is clear. *Bank of Ohio* v. *Knoop*, 16 How., 369–401; *Keokuk R. R.* v. *Missouri*, 152 U. S., 301; *W. & W. R. R.* v. *Alsbrook*, 146 U. S., 302.

These suits being for other years than those sued for in the Farrington case, that decision is not (as an adjudication) conclusive of the present case. *Cromwell* v. *The County of Sac*, 94 U. S., 351; *Nesbitt* v. *Riverside Ind. District*, 144 U. S., 610; *W. & W. R. R.* v. *Alsbrook*, 146 U. S., 279; *Keokuk R. R.* v. *Missouri*, 152 U. S., 301.

. It having been held by the Supreme Court of the United States, in the Farrington case, that the charter tax was laid on the shares of stock, and that the same were not subject to other or further taxation, the adjudication would ordinarily be treated as controlling upon this Court, provided the question is the same, or in substance the same, as was there considered and decided.

If the omitted words be not material, and the construction of the full text is the same as heretofore given to that part of the clause under consideration in *Farrington* v. *Tennessee*, then that decision might control; but if the omitted words are material, and may lead to a different construction, then the question is *res integra* in fact, as it is in law, and open to consideration by this Court. This is the controlling and vital question in this case.

It will be observed that this charter differs from that of the Union & Planters' Bank, in that the annual tax of one-half of one per cent. is to be paid to the State on each share of capital; not on each share of capital subscribed, as was the case in the Union & Planters' Bank (the Farrington case). Stress was laid by the Court in the Farrington case upon the word "subscribed," that Court using the fact that the tax was laid upon the stock subscribed, whether paid in or not, as one of the arguments to show that the charter tax was on the shares, and for the reason that it would never be supposed that the State intended to tax as property capital stock not paid in. The more striking difference lies in the fact that, by this charter, the institution is given "a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes." This language naturally implies that the taxes here referred to are upon the shares, and that the lien reserved by the State for taxes does not refer to the annual

charter tax of one-half of one per cent., and for the reason that the charter tax was to be paid by the corporation, but to such other or general taxes as might be levied by the State.

If the charter tax was not the subject of reference in the reservation of a lien to the State, it would appear that the State clearly reserved the power generally to tax the shares by reserving a lien for such taxes. Is it natural or reasonable to assume that the State reserved a lien on the shares (the property of the shareholders) to pay a tax that the corporation was required to discharge—required one person to pay a tax, but reserved a lien on the property of another to secure its payment?

The contention of the defendants that the charter tax is on the shares, and that the lien is reserved for that tax, puts the State in the attitude of having voluntarily postponed itself to every other creditor of the corporation, for all creditors must be paid before the shareholder gets anything. Why should the State accept such inadequate security?

In 1836 the case of the *Union Bank* v. *Tennessee* was decided, and the principle established therein had been the law of the State for twenty years when this charter was granted. The exemption clause of that charter is: "That, in consideration of the privileges granted by the charter, the bank agrees to pay annually the one-half of one per cent. on the amount of the capital stock paid in by the stockholders other than the State." 9 Yer., 492.

In that case it was established as the law of Tennessee that, under such charter, the capital stock was exempt from taxation, other than the charter tax, but that the shares were taxable; and we may well assume that the Legislature so understood the law when defendant's charter in this case was granted—that they understood that the charter tax was upon the capital stock, and that the shares in hands of the holders were taxable.

Applying the rule that all doubts are to be solved in favor of the State; that when an exemption is claimed, it must be shown indubitably to exist, and that the presumption is always against any surrender of the taxing power, we think the correct construction of the charter, as now presented, is, that the charter tax was laid on the capital stock, and that the shares of stock are subject to general taxation.

Prior to the decision of the Farrington case, 95 U. S., 679, this Court had always so understood and construed these charters. *Union Bank* v. *Tennessee*, 9 Yer,, 489; *Memphis* v. *Farrington*, 8 Bax., 539. Subsequent to that decision, our Court has followed it in a line of cases, among which are the *Bank of Commerce* v. *McGowan*, 6 Lea, 705; and *Memphis* v. *Bank and Insurance Companies*, 7 Pickle, 547.

Regarding the present case as one which presents new questions, and calls for a construction of the exemption clause in its entirety, we rest our opinion *solely* upon these grounds.

From the conclusions above reached Chief Justice Snodgrass and Judge McAlister dissent.

The next important question is as to the taxability of stock issued since the adoption of the present Constitution of 1870.

The charter provides, Sec. 2: "That the capital stock of said company shall be divided into shares of fifty dollars each, and when two hundred shares shall have been subscribed and the sum of one dollar per share paid thereon, the shareholders may meet and elect five directors." By Sec. No. 4, it is provided: "It may receive on deposit any and all sums not less than one dollar per week offered as stock deposits; . . . and when such deposit shall amount to fifty dollars, it may, at the option of the depositor, become stock in the institution."

It is agreed by stipulation that, on May 5, 1870, the day our present Constitution was adopted, the capital stock was $200,000; that on March 17, 1887, and on sundry days prior to June 1, 1887, it was regularly increased to $600,000; and that, on March 17, 1890, and on sundry days prior to June 1, 1890, it was again regularly increased to $1,000,000.

By the charter there was no maximum of capital fixed. The charter contemplated an increase of capital stock, gradually and at various times, as the stock deposits should, at the election of depositors, be turned into stock. The admission that the increase was regularly made, closes all inquiry upon that point.

Unless the charter was void for uncertainty, indefiniteness, or a reckless disregard for the public interest, we see no force in the contention made by the State on this point. We think, if valid when granted, the increase could as well be made after as before the present Constitution. If the right to so increase was given, it cannot be taken away.

Section 8 of Art. XI. of the Constitution of 1870 provides: "No corporation shall be created, or its powers increased or diminished, by special laws, but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed, and no such alteration or repeal shall interfere with or divest rights which have become vested." Without such constitutional provision the law would be the same.

We think the right given this company in 1856, to increase its stock from time to time, was such vested right. *Memphis* v. *Memphis City Bank*, 7 Pickle, 586.

It thus all depends on the legality of the original grant. Whilst we can see plainly that this corporation might, under this charter, have withdrawn from all but the charter tax, a sum of money, the possession of which by one corporation might prove inimical to the public interest, and that the grant was not sufficiently guarded in the matter of amount of capital, yet, such, we think, was the contract, and, as such, it must be upheld. It

is contended that a charter in which no maximum of capital is fixed is void, as opposed to public policy, but we do not find the authorities sustaining this proposition. The question was before this Court in *State* v. *Butler*, 13 Lea, 407, where it was held, or assumed, that the increase was legal. Again, the long acquiescence of the State in such increase of capital stock—for twenty-five years as to $200,000, for eight years as to $600,000, and for five years as to $1,000,000—may well be considered by this Court in passing upon this increase of stock. We are constrained to hold that the stock issued since May 5, 1870, stands (as to taxation) in all respects as does the stock earlier issued.

From the conclusion last announced Judges Caldwell and Wilkes dissent.

Another important question is that of the liability to taxation of the surplus and undivided profits. Assuming, for the present, that our revenue laws impose a tax upon the net surplus, or upon the surplus and undivided profits, is such law valid when applied to the bank in question, the capital stock of which is exempt from taxation? In the case of *The State* v. *Phœnix Fire & Marine Ins. Co.* we held the surplus for the year 1892 taxable, but by an oral opinion.

It is clear this fund, accurately speaking, is not capital stock, but is an asset of the bank, which it uses in the banking business. It is also clear that good banking in the present age requires the

carrying of a proper surplus to meet emergencies, to inspire confidence upon the part of the public, and to keep the capital of the bank unimpaired. National banks are, by the Acts of Congress, required to accumulate and lay by a surplus of twenty per cent. upon the capital, which would indicate that a surplus to that extent is now regarded by financiers as not too much for such institutions to carry. It is certain such surplus is employed in the legitimate business of the bank, and it is not taxable, upon the theory that this fund has been invested or employed in business not within the scope of the corporation as chartered. We cannot rest the case upon that line of decisions of this Court and of the United States Supreme Court which holds that, where capital is invested in real estate or other property not necessary to the corporate business, such property is taxable, notwithstanding the exemption of the capital stock, for those cases rest solely upon the fact of the investment of the fund outside of the necessary corporate business. If the surplus is taxable, it must be upon the ground that it is not a part of the capital stock, strictly speaking, but a fund which belongs to the bank, and which is employed by it in its business.

The main contention of defendants is that to tax the surplus is indirectly, but just as certainly, to tax the shareholder, which the State may not do, where the shares are exempt from taxation. Until a dividend is declared out of said surplus, it is abso-

lutely certain that the shareholders have no title to it. The right and title is in the corporation.

In *Lochardt* v. *Van Alustyne*, 31 · Mich., 76, Judge Cooley, at p. 78, says: "A right to a dividend from the profits of a corporation is no debt until the dividend is declared. Until that time, the dividend is only something that may possibly come into existence, but the obligation on the part of the corporation to declare it, cannot be treated as the dividend itself. . . . A dividend . . . is a fund which the corporation sets apart from its profits to be divided among its members."

Cook on Stock and Stockholders, Sec. 534, says: "A dividend is a corporate profit set aside, declared, and ordered by the proper corporate authorities to be paid to the stockholders, on demand or at a fixed time. A dividend becomes the property of the shareholder, and the shareholder acquires his legal right thereto only when it is regularly declared. Inasmuch as a dividend can be declared only out of net profits, which may or may not be earned, a stockholder, it is clear, is not absolutely but only conditionally entitled to a dividend, and he is, therefore, in no proper sense, in respect thereto, a creditor of the corporation until the dividend is declared and made absolutely payable."

In *The People* v. *The Supervisors of Niagara*, 4 Hill, 23, Bronson, J., says: "It is undoubtedly true that profits and income are sometimes used as synonymous terms, but, strictly speaking, 'income'

means that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures, while 'profits' generally mean the gain which is made upon any business or investment when both receipts and payments are taken into the account."

Here we have the question sharply made, Can a corporation, operating under such a charter, hold a surplus fund, equal to thirty-five per cent. of its capital, absolutely free of taxation? We think not. Manifestly, this surplus was not put aside to be distributed to the shareholders as dividends, but is held as a reserve fund against contingencies, and which, in the meantime, is, to all intents and purposes, used and employed as capital. On the capital stock, or shares in same ' amount, it pays the charter tax, but on this surplus it pays no charter tax. If this be legal, the corporation may practically increase its working capital to an unlimited amount, and enjoy complete immunity from taxation on the amount in excess of the nominal capital.

In the very recent case of *Iowa State Savings Bank* v. *The City Council of Burlington*, N. W. Rep., Vol. LXI., 851, the Supreme Court of Iowa held the surplus of a savings bank taxable under an Act which provides: "The paid up capital of all savings banks shall be subject to taxation."

An Act of New Jersey provides: "That all private corporations are to be assessed at the full amount of their capital stock paid in and accumulated surplus."

*State* v. *Utter*, 34 New Jersey, 489, involved an assessment under this Act on a surplus of over $3,000,000. Judge Van Syckle says: "The term 'accumulated surplus,' in its application to stock companies, is well understood to refer to the fund they have in excess of their capital and liabilities. Applying this definition to the relators will not ease them of the burden imposed. They put their capital at $665,300, in addition to which they have assets of the value of $3,338,882 over and above all liabilities. . . Exemption from taxation of the assets of the company which are in excess of $4,-000,000 would be manifestly unjust. These assets are made up of the aggregate value of the policies held by its members. By express provision of this Act of 1862, persons holding such policies could not be assessed for their value, and if the company cannot be assessed, a new mode of putting property beyond the reach of the tax gatherer has been discovered. The Legislature withdrew the value of the policy from taxation in the hands of the policy holder, upon the theory that they had taxed the company. This company was subject to be assessed as a corporation without a capital stock, and therefore the basis upon which the assessment proceeded was correct."

In *St. Louis Mutual Insurance Co.* v. *Charles*, 47 Mo., 465, the Court, Bliss, J., says: "This company had, by its own showing, acquired at least three times the amount of its original stock, all of which,

16—11 P

in private hands, would have been subject to taxation. There was no law that exempted it in the hands of the company. . . . The petition alleges that the capital stock of plaintiff was $100,000, all paid in, and that the tax assessment was on $300,-000, being for money loaned and on hand belonging to the plaintiff.'' The Court sustained the tax.

The case of the *Attorney-general* v. *The Bank*, 4 Jones, N. C., Equity, 287, arose in construing a charter wherein the State had clearly exempted the franchise. The Court says: '' But though the Legislature cannot tax the franchise of the bank, they may tax *ad libitum* the dividends or profits of the individual shareholder, and the corporate property of the bank, because they are separate from the franchise, and nothing can exempt them from taxation, unless there be a special agreement to the contrary between the bank and the State.'' Citing *Gordon* v. *The Appeal Tax Court*, 3 How., 133; *Bank of Cape Fear* v. *Edwards*, 5 Ire., 510. Here the tax was of the franchise.

An important case in this connection is *State* v. *The Bank of Smyrna*, 2 Houston, Del., 99. This case, as to taxing the surplus, decides the exact question we have in hand, and is a clear and well-reasoned case by Chancellor Harrington. The tax in dispute was under the law of 1885, in terms levying a tax on the surplus earnings of the bank, and the law was sustained.

The United States Supreme Court, in the Far-

rington case, at page 686, say: "If a large surplus be accumulated and laid by, that does not form a part of it"—that is, the capital. At page 687 the same Court designate "accumulated earnings" as a distinct object of taxation.

*State* v. *City Council of Charleston*, 5 Rich. Law, 561, holds that where the bank and its stock were released from all taxation, a tax by the city on the dividends or income, which the stockholder may receive on his shares of the capital stock, is void.

After a careful and full consideration of the question, we are satisfied the surplus is subject to taxation, provided the State has imposed a tax upon it, and it has been legally assessed.

It is by the defendants denied that there is any law authorizing such a tax. The assessing officers have assessed the surplus and undivided profits of this bank at $350,000 for each of the years 1892, 1893, and 1894.

Clearly the surplus is not taxable under Sec. 14, Act of 1887, except as it may enter into the value of the capital stock. The reference in that section to surplus is only in that connection, and, unless the surplus is taxed under some other provision of law, the claim cannot be sustained.

Section 1 of Assessment Act of 1887, Chapter 2, page 24, is as follows: "SEC. 1. *Be it enacted by the General Assembly of the State of Tennessee,* That all property, real, personal, and mixed, shall be assessed for taxation for State, county, and mu-

nicipal purposes, except such as is declared exempt in the next section.''

After describing the various kinds of property to be taxed, subsection 10 of Sec. 7, of said Act, p. 26, provides: ''All other personal property, whether belonging to individuals, corporations, or firms.'' By the closing clause of Sec. 3, of Chap. 26, Acts of Extra Session of 1891, p. 76, it is provided: ''That the surplus and undivided profits in such bank, banking association, or other corporation shall be assessable to said bank or other corporation, and the same shall not be considered in the assessment of the stock therein.''

We think these Acts authorize the assessment of this surplus money in the hands of the defendant bank. We rest the right under these provisions of law, and not under Sec. 14 of the Act of 1887.

The capital and franchise not being subject to taxation, the privilege tax assessed and claimed is void.

The decrees in both cases are reversed, and decrees will here be entered against the corporation in pursuance of this opinion and of the stipulations on file herein. The Bank of Commerce will pay the costs of this Court and of the Court below.