# Bank *v.* Memphis.

## (*Jackson.* May 21, 1898.)

1. TAXATION. *Assessment of banks.*

A provision in a general assessment Act that banks and other like corporations shall not be assessed upon their capital stock, but that their shareholders shall be assessed and taxed upon the market value of their shares, is a valid and constitutional method for the taxation of banks and other like institutions, and forbids the assessment of their capital stock under other general provisions of the Act requiring all property to be taxed. (*Post, pp. 158–160.*)

Constitution construed: Art. II., Sec. 28.

Acts construed: Acts 1895, Ch. 120.

Cases cited: State *v.* Butler, 86 Tenn., 631; Street R. Co. *v.* Morrow, 87 Tenn., 417; State *v.* Bank, 95 Tenn., 226.

2. SAME. *Charter exemption does not exist.*

A bank whose charter provides that it "shall pay to the State an annual tax of one-half of one per cent. on each share of stock subscribed, which shall be in lieu of all other taxes," is held, upon authority of more recent decisions of the Supreme Court of the United States, and contrary to the former decisions of this Court, to have no exemption of its capital stock from *ad valorem* taxation and *a fortiori* none from privilege taxation. (*Post, pp. 160–167.*)

Case cited and approved: 161 U. S., 134.

Cited and overruled: Memphis *v.* Bank, 91 Tenn., 556; State *v.* Butler, 13 Lea, 400; Memphis *v.* Insurance Co., 6 Bax., 527; Memphis *v.* Bank, 91 Tenn., 551; Bank *v.* State, 9 Yer., 490.

3. SAME. *Res adjudicata.*

The plea of *res adjudicata* is limited in its effect, in tax cases, to the taxes actually in litigation, and is not conclusive in respect of other taxes assessed for other and subsequent years. (*Post, pp. 167, 168.*)

Bank *v.* Memphis.

Cases cited and approved: State *v.* Bank, 95 Tenn., 231; 94 U. S.,
    351; 144 U. S., 610; 146 U. S., 279; 153 U. S., 301.
Cited and disapproved: 167 U. S., 371.

4. SAME.   *Statute of limitations.*
A city's claim for privilege taxes is subject to the bar of six
    years prescribed by Acts 1885, Ch. 24, for all taxes, but not to
    the bar of three years prescribed by the general revenue Act
    of 1895, Ch. 5, for State and county taxes.   (*Post, p. 168.*)
Acts construed: Acts 1885, Ch. 24; Acts 1895, Ch. 5.

FROM SHELBY.

Appeal from Chancery Court. of Shelby County.
STERLING PIERSON, Ch.

CARROLL, CHALMERS & McKELLAR for Bank.

METCALF & WALKER for Memphis.

McALISTER, J.   This record presents a question
of taxation.   Complainant bank filed its bill in the
Chancery Court of Shelby County to enjoin the city
of Memphis and county of Shelby against the col-
lection of taxes on its capital stock, for the years
1896 and 1897.   Two grounds of relief were out-
lined in the bill, viz.:

(1) That the capital stock . of said Union &
Planter's Bank is exempt from general taxation by
its charter, or act of incorporation, which provides
that "said company shall pay to the State an an-
nual tax of one-half of one per cent. on each share
of stock subscribed, which shall be in lieu of all

other taxes," and that this exemption has been adjudged by this Court in two cases, which have the force of *res adjudicata.*

(2) That, conceding he taxability of the capital stock, the Legislature has made no provision for its assessment, but, on the contrary, has expressly declared, by Sec. 10, Acts 1895, that " no tax shall hereafter be assessed upon the capital stock of any bank, banking association, or loan, trust, insurance, or investment companies, but the shareholders in such bank or other ·association shall be assessed and taxed upon the market value of their shares of stock therein."

The city and county answered the bill, denying the want of power in the assessing officers to assess the capital stock of complainant bank, and denying further that the charter of said bank exempted its capital stock from taxation, or that said matter is *res adjudicata,* or that complainants are estopped by judgment.

The city and county also filed cross bills for the collection of their taxes—the amounts due the city for the year 1897 and the county for the year 1896, and also for the collection of city privilege taxes.

It was admitted, .in a stipulation of agreed facts, that the capital stock of complainant bank had been assessed by the Board of Equalization of Shelby County, for the year 1896, at $217,000, and that complainant bank could not rightly contest the assessment so ar as the amount thereof was concerned.

The Comptroller's certificate was attached to the stipulation, showing the payment annually of the charter tax of one-half of one per cent.

The Chancellor, upon the hearing, was of opinion the bank was not liable for any of said taxes, and thereupon dismissed defendant's cross bill and perpetuated the injunction. Defendants appealed, and have assigned errors, as follows, to wit:

"1. The Court below erred in holding that it was bound to follow the case of the *State, for the use of Memphis*, v. *Union & Planters' Bank*, 7 Pickle, 551, and to decree in favor of the exemption from general taxation of the capital stock of the complainant bank. It should have been decreed that the capital stock was subject to general taxation.

"2. In any event, the Court should have held that the judgment in the said case of *State, for the use of Memphis*, v. *Union & Planters' Bank*, 7 Pick., *supra*, was not *res adjudicata* as against the State or county—the county not being a party to that proceeding at all, and the State a nominal party only—the only real party thereto being the city of Memphis.

"3. It should have been decreed that the capital stock was legally assessed at $217,000; that the amounts due to the city and county, respectively, were as shown by the exhibits to the bill, and judgment in favor of the city and county, respectively, should have been rendered on the cross bill.

"4. The bank should have been adjudged liable to the city for an annual privilege tax of $600 under the provisions of the Act of 1889, Sec. 2, Subsec. 7, by which the Legislature enacted a municipal privilege tax on each banking institution of $1 on every $1,000 of capital stock paid in—the capital stock of the complainant bank being $600,000."

The first question to be decided, is whether the property now sought to be taxed has been assessed, for assessment must precede taxation, and is an indispensable condition of the right to collect a tax.

As already stated, the Assessment Act of 1895 provides that "no tax should thereafter be assessed upon the capital stock of any bank or banking association, but that the shares of stock should be assessed to the individual shareholder." Here is a direct legislative prohibition against any assessment of capital stock to the corporation for purposes of taxation, and a different system for the assessment of such stock is provided. The assessment of the capital stock of complainant bank to the corporation, was made by the Board of Equalization of Shelby County, under Sec. 51, Ch. 120, Acts of 1895, which provides "that the County Board of Equalization shall have the power to add to the assessment lists any property subject to taxation and not assessed by the regular Assessor." The Act of 1895 further provides, viz., "that all property, real, personal, and mixed, shall be assessed for taxation for State, county, and municipal purposes, except such

as is declared exempt in the next section.'' After enumerating the exemption, it provides, ''All other personal property, whether belonging to individuals, corporations, or firms.''

It is insisted on behalf of the city that these general provisions of the Act of 1895 are amply sufficient to justify and require the assessment of the capital stock of this bank, and such being the case, all particular provisions in hostility to the Constitution that all property must be taxed, would fall. The Constitution ordains that all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. Art. II., Sec. 28.

It is true that, under well-settled decisions of this Court, the capital stock belonging to the corporation and the shares of stock owned by the stockholders, are separate and distinct subjects of taxation, and the taxation of one is not the taxation of the other, nor is the assessment of both subjects duplicate taxation. *Street R. R. Co.* v. *Morrow*, 87 Tenn., 417; *State* v. *Bank of Commerce*, 95 Tenn., 226.

The value of such stock, under the plain provision of the Constitution, is to be ascertained in such manner as the Legislature shall direct. The Legislature in its wisdom has provided for the assessment of stock to the shareholder, and has determined that no tax shall be assessed upon the capital of the corporation. It was clearly within the power of the

Legislature to prescribe this method of taxing bank stock, and, until the system is changed, no *ad valorem* tax can be collected from the corporation on the capital stock. The mandate of the Constitution, requiring uniform taxation of uniform values, is not self-executing, but depends for its enforcement upon appropriate legislation. This very subject is illustrated by a decision of this Court in which the precise point was adjudged.

In *State* v. *Butler*, 86 Tenn., 631, which was a proceeding for the collection of taxes claimed to be due the city of Memphis from the Bank of Commerce, it appeared that the assessment was upon the capital stock of the bank. The Court held that no recovery could be had upon such an assessment; since the Act of 1873 provided that "no tax shall hereafter be assessed upon the capital of any bank or banking association, etc., but the stockholders in such banks . . . shall be assessed and taxed on the value of their shares of stock therein." This decision has remained unreversed and unchallenged from that time to the present.

It is also claimed that said bank is liable to the city of Memphis for certain privilege taxes. In the case of *Memphis* v. *Union & Planters' Bank*, 7 Pickle, 556, an effort was made to collect privilege taxes from this bank for the years 1889, 1890, and 1891, inclusive, and this Court adjudged the bank not liable.

Judge Caldwell said: "Complainant seeks, in addition to what has already been stated, to recover

from the bank $1,800 as privilege taxes for the years 1889, 1890, and 1891. These taxes are claimed from the corporation for the right of exercising its franchises—for the privilege of doing a banking business. Manifestly, the charter tax was intended to cover this right or privilege. The language of the charter implies that, in consideration of the public good and the payment of the tax therein specified, the State will allow the corporation to exercise the franchises granted, without further taxation." Citing *City of Memphis* v. *Hernando Ins. Co.*, 6 Bax., 527; *Union Bank* v. *State*, 9 Yer., 490.

In reply to this adjudication, counsel for the city argues, viz.: "It is not in the least denied on our part that this Court has, over and over again, under just such a charter as this, held that the corporation was not liable to a privilege tax. This line of decisions began with the case of Union Bank, 9 Yerger, and runs through all the decisions on that subject down to and including the cases in 7 Pickle. It is, however, never to be forgotten that, throughout this whole line of decisions, this Court was uniformly and consistently holding that under such a charter as this the charter tax was laid on, and the exemption was of the corporation and its capital stock, and that the shares of stock were taxable. All that line of decisions has now been reversed by the Supreme Court of the United States, that Court holding, that under the proper reading and legal effect of the charter, the charter tax is

17 P—11

on, and the exemption is of the shares of stock, and that the corporation gets no exemption whatever under the charter. If it be true, therefore, as it seems undoubtedly to be, that the capital stock is taxable, for the reason that the corporation gets no exemption under the charter, there would seem to be no reason why the corporation should not be liable to a privilege tax, as well as to an *ad valorem* tax. The Court will remember that in the series of cases that were before it on demurrer in 7 Pickle, and on final hearing in 13 Pickle, the privilege tax, under the statute above referred to, was adjudged in every case where they were properly claimed in the pleading and in which it was held that the corporation had no exemption. There is no reason why the same rule of taxation should not apply to the complainant bank."

The decision of this question is therefore necessarily dependent on the determination of the question whether the capital stock of said bank is now liable to taxation. It is insisted, in bar of the claim of the city of Memphis, that the question has already been adjudicated, and two pleas of *res adjudicata* are interposed:

(1) The decrees of the Supreme Court of Tennessee, in the case of *State of Tennessee* v. *Butler*, April term, 1884, wherein it was adjudged that the provisions in its act of incorporation, that the company shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock

subscribed, which shall be in lieu of all other taxes, relieves it of the payment of the taxes now sought to be recovered.

(2) That the decree of this Court, in the case of *City of Memphis* v. *Union & Planters' Bank et al.*, reported in 91 Tenn., 546, adjudged that the commuted tax prescribed by the charter was the grant of an immunity to said bank from the payment of *ad valorem* taxes to the city of Memphis upon its capital stock.

The broad proposition asserted by counsel for complainant bank is that this Court has, by its decrees in *State* v. *Butler*, 13 Lea, 400, and in *State, use, etc.*, v. *U. & P. Bank*, 7 Pickle, 551, conclusively adjudged that the charter of complainant bank exempts both its capital stock and shares of stock from general taxation.

It is not insisted by the bank that there is a judgment estoppel against the county, nor could such an insistence prevail, since the county was not a party to the two cases now relied on as adjudicating the question here presented.

It is well known that the opinion of this Court in *State, use, etc.*, v. *Union & Planters' Bank*, 7 Pickle, 551, was brought about by what this Court deemed to be the true construction and effect of the opinions in the Farrington case, 95 U. S., and the Bank of Commerce case in 104 U. S.

In the 7 Pickle case, this Court said, viz.: "Considering the decision of the United States Supreme Court

in *Farrington* v. *Tennessee*, 95 U. S., 679, and *Bank* v. *Tennessee*, 104 U. S., 493, together, and giving them the controlling weight to which they are entitled, it cannot be held otherwise than that the charter tax of one-half of one per cent. is in lieu of all other taxes, whether against the bank on its capital stock or against owners on shares of stock. Under the construction there given, the charter exemption includes both.'' It was added, that, ''as an original question, this Court would hold as held in *Memphis* v. *Farrington*, 8 Bax., and charge the stockholders with an *ad valorem* tax, but is constrained to hold both exempt under the controlling authority of the United States Supreme Court decisions.''

Since that time, in Union & Planters' Bank case, 161 U. S., the Supreme Court of the United States held that the Farrington case, properly understood, did not hold that both the shares and capital stock were exempt from taxation. It was further held that the charter tax was on the shares of stock, and such shares were exempt from general taxation. It is nevertheless urged on behalf of the bank that the 7 Pickle case is conclusive in its favor, regardless of the reasons that controlled the Court in pronouncing judgment, and that it is conclusive, also, against taxes for other years. As is well said in the brief for the city, ''It would indeed be strange if, under a Constitution such as ours, a mistaken judgment of this Court, declared in most emphatic terms

not to be its own judgment, but to have been sur-
rendered in supposed obedience to that of an appel-
late tribunal—the United States Supreme Court—can
be invoked as a judgment estoppel now that the
same appellate tribunal has decided that identical
question in favor of the State and against the bank,
and that this Court was mistaken in its rendering
of their former opinions.''

It is argued, however, by counsel for the bank,
that the opinion and judgment of the United States
Supreme Court in *Union & Planters' Bank* v. *Shelby
County*, 161 U. S., ——, did not adjudge the cap-
ital stock liable to taxation. The argument for the
bank is that the single question involved therein was
the taxability of the surplus, and that everything
said in the opinion outside of this question was
*obiter*. We understand that Court to have decided
in the case mentioned, that the surplus and undi-
vided profits of said bank were not exempt, for the
reason that the capital stock of said bank was not
exempt. The Court said, viz.: '' There are two
grounds, either of which, if decided in favor of the
appellants in this case, would result in upholding
the validity of the tax upon the surplus: (1) If it
should be held that, by the true interpretation of
the charter, the exemption, while applying to the
shares of stock in the hands of the shareholders,
does not extend to the corporation itself, the tax
would be invalid; (2) even if the tax on the capi-
tal stock were void, that upon the surplus might

still be upheld on the authority of the case of *Bank of Commerce* v. *Tennessee*, 161 U. S., 134. We have already held in that case that a tax on the surplus was valid, but the question whether a tax on the capital stock of the bank was valid could not be raised there, because the case was before us on writ of error taken to a State Court, and the question in the State Court was decided in favor of the exemption claimed by the bank. This being an appeal from a judgment of the United States Circuit Court, both questions are open for our decision. We think it therefore proper to here decide the question first above stated.

" Various decisions in the Courts of Tennessee have been cited by counsel on both sides as to the meaning of the exemption clause—whether or not it covered the capital stock and the shares also. Generally the Courts of that State held, before the decisions of this Court in *Farrington* v. *Tennessee*, 95 U. S., 679, that the charter tax was laid on the corporate capital stock, and the exemption was of that stock from any further tax. Subsequently to the decision in that case, the State Courts have held that, under the construction given to the clause in the Farrington case and in *Bank of Commerce* v. *Tennessee*, 104 U. S., 493, the tax was on the shares, and the exemption covered both the capital stock and the shares thereof. The decision giving exemption to both classes of property was adjudged alone upon the authority cited. In such a case as

this, where we are to construe the meaning of the clause of the statutes as to what contract is contained therein, and whether the State has passed any law impairing its obligation, we are not bound by the previous decisions of the State Courts, except when they have been so long and firmly established as to constitute a rule of property (which is not the case here), and we decide for ourselves, independently of the decisions of the State Courts, whether there is a contract and whether its obligation is impaired. *Louisville & Nashville R. R. Co.* v. *Palmes,* 109 U. S., 244, 256; *Vicksburg S. & P. R. Co.* v. *Dennis,* 116 U. S., 665, 667; *Mobile & O. R. Co.* v. *Tennessee,* 153 U. S., 486, 492."

The Court, after a review and discussion of the cases held, viz.: "This determines the liability of the capital stock of the Union and Planters' Bank to taxation, and, of course, it overrules any claim on the part of that bank for exemption from taxation of its surplus or accumulated profits."

. If, therefore, the principle of judgment estoppel is to be invoked, the last judgment of the highest appellate tribunal determines the taxability of said capital stock.

Again, we think the plea of *res judicata* in tax cases is to be limited to the taxes actually in litigation and is not conclusive in respect of taxes assessed for other and subsequent years. Since this is not a Federal question, we decline to follow the ruling in *New Orleans* v. *Citizens' Bank,* 167 U. S., 371, in which it was held by a majority opinion

that a judgment in a tax case is as conclusive of the taxes of other years as it is of the taxes for the years actually involved.

In *State* v. *Bank of Commerce*, 95 Tenn., 231, we said: "These suits being for other years than those sued for in the Farrington case, that decision is not (as an adjudication) conclusive of the present case," citing *Cromwell* v. *County of Sac*, 94 U. S., 351; *Nesbett* v. *Riverside Ind. Dist.*, 144 U. S., 610; *W. & W. R. R.* v. *Alsobrook*, 146 U. S., 279; *Keokuk R. R.* v. *Missouri*, 152 U. S., 301. We adhere to that ruling.

The result is that, in our opinion, the capital stock of this bank is not exempt from taxation, but is not liable in the present case because the Legislature has made no provision for its assessment. The city, however, is entitled to collect its privilege taxes for six years next preceding the filing of the bill. The three years' limitation under the Act of the Extra Session of 1895, Ch. 5, Subsec. 7, has no application. That was a general revenue law of the State, and cannot operate as a bar to a claim by the city for its privilege taxes. Such claim is barred only to the extent that it falls within the general statute of limitations as to taxes, found in Chapter 24 of the Acts of 1885, under which all taxes are barred unless suit is brought "within six years from the first of January of the year for which such taxes accrued."

The decree of the Chancellor is reversed, and a decree will be entered in conformity with this opinion.