The CITY OF LEWISBURG, the County of Marshall and the Attorney General of the State of Tennessee, Appellants,

v.

The FIRST NATIONAL BANK OF LEWISBURG and the Peoples & Union Bank of Lewisburg, Appellees.

Supreme Court of Tennessee.

April 3, 1978.

Stephen S. Bowden, William N. Lloyd, Lewisburg, Brooks McLemore, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for appellants.

James M. Jones, Jr., Knox Bigham, Lewisburg, for appellees.

OPINION

FONES, Justice.

Two Lewisburg banks brought this suit to recover taxes paid under protest to the City of Lewisburg and to Marshall County. The taxes in question were assessed for the year 1975. The tax is upon the shares of stock of stockholders of the banks pursuant to T.C.A. §§ 67–715—67–728 inclusive, but is assessed to and collected from banks.

The learned Chancellor agreed with the contention of the banks that Article II, Section 28, Constitution of Tennessee, ratified by the people in August, 1972, effective January 1, 1973, rendered unconstitutional taxation of the shares of stock of stockholders of banks and he awarded a judgment in favor of the banks for the taxes paid the city and county based upon the assessment of the total value of the outstanding shares of capital stock of each bank, respectively.

It was the Chancellor's opinion that "the only reasonable meaning of the language used is the Legislature cannot tax such property."

The only issue in this case is whether or not the constitutional amendment to Article II, Section 28, rendered unconstitutional the taxation of shares of bank stock with the result that the method of assessment and taxation in effect at the time of the amendment was abrogated.

The Attorney General was made a party defendant in compliance with Rule 24.04, T.R.C.P.

This case turns upon the interpretation of the intangible personal property paragraph of Article II, Section 28, Constitution of Tennessee. That paragraph is as follows:

"The Legislature shall have power to classify Intangible Personal Property into subclassifications and to establish a ratio

of assessment to value in each class or subclass, and shall provide fair and equitable methods of apportionment of the value of same to this State for purposes of taxation. Banks, Insurance Companies, Loan and Investment Companies, Savings and Loan Associations, and all similar financial institutions, shall be assessed and taxed in such manner as the Legislature shall direct; provided that for the year 1973, or until such time as the Legislature may provide otherwise, the ratio of assessment to value of property presently taxed shall remain the same as provided by law for the year 1972; provided further that the taxes imposed upon such financial institutions, and paid by them, shall be in lieu of all taxes on the redeemable or cash value of all of their outstanding shares of capital stock, policies of insurance, customer savings and checking accounts, certificates of deposit, and certificates of investment, by whatever name called, including other intangible corporate property of such financial institutions."

The banks rely upon what they assert to be the "plain language" of the second and last proviso in the paragraph as prohibiting the taxing of the "outstanding shares of capital stock" of banks and other corporations referred to in the paragraph.

Defendants insist that the first proviso retained in force and effect the only scheme of taxation of intangible personal property of banks, to wit: that provided in T.C.A. §§ 67–715—67–728.

The tax statutes involved, which for convenience we shall refer to as the bank stock tax, originated as Section 24, Chapter 602, Public Acts 1907. The tax is imposed upon the shares of stock of stockholders of banks, etc., doing business in this state, for state, county and municipal purposes, as their personal property, and contains the proviso that "the assessment of such shares of stock as the property of the stockholders shall be in lieu of any assessment or taxation of the capital stock or corporate property of such corporation, or association." T.C.A. § 67–715 (1976). Such shares of stock are direct-

ed to be assessed at the "actual cash value of same less the assessed value of realty and value of personal property otherwise assessed or returned for taxation, and all such property on which the corporation pays the taxes so assessed." T.C.A. § 67–716 (1976).

It is relevant to observe here a principle of taxation announced in *Bank v. Memphis*, 101 Tenn. 154, 46 S.W. 557 (1898). The bank sought to enjoin the collection of taxes on its capital stock by the city. One of the grounds relied upon was that the Legislature had made no provision for the assessment of a tax on the capital stock of banks and that Section 10, Public Acts 1895 expressly provided that:

" '[N]o tax shall hereafter be assessed upon the capital stock of any bank, banking association, or loan, trust, insurance, or investment companies, but the shareholders in such bank or other associations shall be assessed and taxed upon the market value of their shares of stock therein.' " 101 Tenn. at 156, 46 S.W. at 558.

Commenting upon that act, the Court said:

"It is true that, under well-settled decisions of this Court, the capital stock belonging to the corporation and the shares of stock owned by the stockholder, are separate and distinct subjects of taxation, and the taxation of one is not the taxation of the other, nor is the assessment of both subjects duplicate taxation. *Street R. R. Co. v. Morrow*, 87 Tenn. 406, 417, 11 S.W. 348; *State v. Bank of Commerce*, 95 Tenn. 221, 226, 31 S.W. 993." 101 Tenn. at 159, 46 S.W. at 559.

This Court made reference to that same principle with respect to Chapter 602, Public Acts 1907, in the case of *Tennessee Fertilizer Co. v. McFall*, 128 Tenn. 645, 163 S.W. 806 (1913), as follows:

"It is within the power of the legislature to assess corporations upon their corporate property and capital stock excluding the shares of stock, or it is within the power of the legislature to assess shares of stock in lieu of corporate property and capital stock. The latter method of as-

sessment was adopted in section 24 of the act of 1907, respecting banking associations and other corporations therein named. Either mode of assessment is valid, and neither can be regarded as unlawfully exempting corporate property from taxation. The two plans are merely different methods of assessment of corporate property. *Bank v. Memphis,* 101 Tenn. 154, 46 S.W. 557; *Carroll v. Alsup,* 107 Tenn. 257, 64 S.W. 193." 128 Tenn. at 660–661, 163 S.W. at 810.

All of the litigants in this case construe the bank stock tax as one "imposed" upon the stockholders, but seek to draw different conclusions therefrom. We are unable to see that that factor has any significance in this case. The tax in question is a tax in lieu of any tax upon the banks' property and it is immaterial to the taxing authority, or the legality thereof, whether the tax ultimately falls upon the bank or the stockholder. It is only significant to note as did the Court in *McFall* that the method of assessment selected by the Legislature was to assess the shares of stock of stockholders in lieu of the capital stock or corporate property of the corporations.

We interpret the intangible personal property paragraph of Article II, Section 28, insofar as it is relevant to the issue in this case, as authorizing the Legislature to do the following:

1. Classify intangible personal property into subclassifications and establish a ratio of assessment to value in each classification or subclassification;

2. With express reference to banks, insurance companies, loan and investment companies, savings and loan associations and similar institutions, assess and tax their intangible personal property in such manner as the Legislature may direct, consistent with whatever legislative action may be taken pursuant to the authorization contained in the first sentence of the paragraph;

(a) provided, that for the year 1973, or until otherwise provided by the General Assembly, the same method of assessment that presently prevails (1972) for determining the value of presently taxed (1972) intangible personal property of banks, etc., shall remain the same as provided by law for the year 1972;

(b) also provided, that whatever intangible personal property taxes the Legislature may hereinafter (January 1, 1973) enact to be imposed upon and paid by banks, etc., when and if that is done, stockholders may not be taxed upon their shares of stock, or depositors upon their savings and checking accounts, certificates of deposits, certificates of investment, or similar intangible personal property.

The first proviso was obviously designed to prevent institutions from enjoying the possibility of a hiatus in intangible personal property taxation from January 1, 1973, until such time as the Legislature elected to classify intangible personal property and establish a ratio of assessment to value. With respect to real property and tangible personal property, Article II, Section 28, establishes the sub-classifications and the ratio of assessment to value for each of the classifications, thus avoiding a possible hiatus. As a necessary and inescapable incident of the first proviso, the relevant tax law in effect in 1972 was retained in full force and effect until Legislative action directly repealing, altering, or amending same. The relevant tax law was T.C.A. §§ 67–715—67–728. It was still in force and effect in 1975,[1] the taxable year involved in this case.

The second proviso does not exempt outstanding shares of capital stock, policies of insurance, customer savings and checking accounts, certificates of deposit, etc., from taxation. They may be the subject of assessment and taxation to financial institutions, at the discretion of the Legislature.

1. In 1977, banks were removed from the application of these statutes by amendments to T.C.A. §§ 67–715, 67–721, and 67–726, and by repeal of T.C.A. § 67–719. 1977 Tenn.Pub. Acts, ch. 140, §§ 2, 5, 6, 7.

If the convention had intended, by the language used, to exempt the types of intangible personal property specified in the second proviso, that action would be in violation of an express limitation of the call, and void.

Chapter 421, Acts of 1968, as amended, provided in part:

"Exemption of Intangible Personal Property. The Convention shall further provide that money deposited in an individual's personal or family checking or savings account shall be exempt from taxes, in an amount to be determined by the convention.

"No exemptions other than those specified herein shall be authorized by the Convention . . . ." 1968 Tenn.Pub. Acts, ch. 597.

The restriction of exemptions of intangible personal property to money deposited in an individual's personal or family checking or savings account is a valid limitation on the call. See *Illustration Design Group, Inc. v. McCanless,* 224 Tenn. 284, 454 S.W.2d 115 (1970); *Cummings v. Beeler,* 189 Tenn. 151, 223 S.W.2d 913 (1949). It does not involve dictation by the Legislature to the convention of mandatory constitutional language, condemned in *Snow v. City of Memphis,* 527 S.W.2d 55 (Tenn.1975).

The convention provided in the first paragraph of Article II, Section 28, that the entire amount of money deposited in an individual's personal or family checking or savings accounts shall be exempt from taxation.

Thus the customer checking and savings accounts referred to in the intangible personal property paragraph of Article II, Section 28, embraces only accounts other than individual and family accounts.

The second proviso is patently ambiguous. If interpreted as exempting bank stock from taxation either in the hands of stockholders or as capital stock of the banks, it is beyond the call of the convention and void. On the other hand, if interpreted to mean that any tax hereafter imposed upon the intangible personal property of banks, etc., shall be in lieu and instead of taxation of

stockholders, depositors, etc., as owners of the specified types of intangible personal property, it is valid. That limitation would merely restrict taxation of the specified types of intangible personal property to one source, avoiding a form of duplicate taxation, a valid constitutional objective within the limitation of the call.

We think that by analogy, the same rule applicable to legislative acts should be applicable to constitutional amendments, to wit, where two interpretations are possible, one of which would invalidate and the other validate, the presumption is that the valid interpretation was intended. See *White v. Davidson County,* 210 Tenn. 456, 360 S.W.2d 15 (1962); *Bayless v. Knox County,* 199 Tenn. 268, 286 S.W.2d 579 (1956); see also *Epstein v. State,* 211 Tenn. 633, 366 S.W.2d 914 (1963). Also, as we said in *Snow, supra,* the courts must indulge every reasonable presumption of law and fact in favor of the validity of a constitutional amendment after it has been ratified by the people.

For these reasons we hold that Article II, Section 28, as amended effective January 1, 1973, did not affect the validity of the method of taxation in T.C.A. §§ 67–715—67–728. No legislative change was made until after 1975, and the assessments for that year upon the two Lewisburg banks were valid.

The decree of the Chancery Court of Marshall County is reversed and this suit is dismissed. The costs are adjudged against the banks.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.